In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-1630 & 12-1880

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/
Cross-Appellant,*

*v.*

JEFFREY PRICE,

*Defendant-Appellant/
Cross-Appellee.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 09-cr-30107 — **Sue E. Myerscough**, *Judge.*

ARGUED APRIL 8, 2013 — DECIDED DECEMBER 5, 2014

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Jeffrey Price took numerous sexually explicit photographs of his daughter R.P. when she was between the ages of 10 and 12. He put some of them on the Internet, and they have been implicated in at least 160 child-pornography investigations across the country. Price also kept

a large stash of child pornography depicting other children, which he stored on two computers.

For this conduct Price was indicted on charges of producing child pornography in violation of 18 U.S.C. § 2251(a) and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). A jury convicted him as charged.

Price is more dangerous than the average child-pornography offender because he also has a history of sexually abusing children. He molested R.P. on multiple occasions, and he sexually abused his sister on a regular basis when she was between the ages of 8 and 14. Despite this history, the district judge imposed a sentence well below the 40-year term recommended by the sentencing guidelines: 18 years on the production count and a concurrent 6-year term on the possession count.

On appeal Price challenges the search that led to the discovery of child pornography on one of his computers. He also raises a claim of instructional error, arguing that the district court's definition of the term "sexually explicit conduct"—an element of the statutory definition of child pornography—was wrong on the law, unconstitutionally overbroad, and improperly incorporated the so-called *Dost* factors. *See United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). The government cross-appeals, challenging the below-guidelines sentence as substantively unreasonable.

We affirm. Price's current attacks on the search and the jury instruction are new on appeal, so we review for plain error only. There was no error. Price consented to the search, and the

jury instruction defining "sexually explicit conduct" was neither legally improper nor unconstitutionally overbroad. We take this opportunity, however, to discourage the use of the *Dost* factors; they are unnecessary in light of the clear statutory definition of the term "sexually explicit conduct."

We also reject the government's challenge to Price's 18-year sentence. The judge expressed disagreement with the child-pornography guidelines as a policy matter, as she is permitted to do, and she adequately explained her reasons for finding the 40-year guidelines recommendation too high. Reasonable people can certainly disagree with that decision—especially in light of the aggravated facts of Price's case and his history of sexually assaulting children—but we cannot call it an abuse of discretion.

## I. Background

The sordid facts of this case came to light when the child-advocacy agency in Springfield, Illinois, received a report that Price had beaten his daughter R.P. with a belt. When an investigator interviewed R.P. about the beating, she revealed that Price had taken numerous sexually explicit photos of her when she was between the ages of 10 and 12 years old. This information was relayed to the Springfield Police Department, and on September 11, 2009, Detective Paula Morrow obtained a warrant from a state judge to search Price's residence. The warrant authorized the seizure of, among other things, any electronic computer media that could be related to the offenses of criminal sexual abuse of a child or the receipt, distribution, or possession of child pornography.

Price was not at home on the day the warrant was issued, but Detective Morrow located and interviewed him at his stepdaughter's home where he was babysitting. Price told Morrow that he had taken photographs of R.P. for a modeling portfolio and had stored them on his computer, but the hard drive had crashed and they were lost. Price also said that he had just discovered—that *very* day—that child pornography was on his laptop computer. He claimed not to know how the pornographic files got there and said he immediately deleted them.

The laptop was sitting next to Price during the interview. Detective Morrow asked him if he would consent to a search of it. Price turned the computer toward her and said she could look at it. Morrow explained that she lacked training in computer forensics and that other law-enforcement agents would have to conduct the search. Price agreed to the search and signed a standard "Consent to Search" form used by the Springfield Police Department.

Price's name appears on the form, as does Detective Morrow's, and the text authorizes the officer "to conduct a complete search at this time of the premises/vehicle under my lawful control"—except that the phrase "premises/vehicle" is crossed out and the word "laptop" is substituted. The consent form more specifically describes the item to be searched as a "Dell Inspiron laptop service tag 36WY0D1" and authorizes the officer "to obtain and remove from the searched premises/vehicle any materials, documents, or other items that may be used in connection with a legitimate law enforcement purpose." Finally, the form certifies that "this consent to search

is being given by me to the above named officers knowingly, voluntarily, and without having received any threats, promises or duress of any kind."

After Price signed the consent form, Morrow took the laptop and went to Price's home to execute the search warrant. She and other officers seized several items, including a desktop computer.

In early October two Springfield detectives conducted a preliminary search of the laptop and discovered suspected child pornography in the recycle bin. Detective Morrow then turned the laptop over to Special Agent Mike Mitchell, a forensic specialist at Immigration and Customs Enforcement, and on October 15 he obtained a federal warrant authorizing a forensic examination of both the laptop and the desktop computer. Agent Mitchell did not find child pornography on the desktop, but he found 934 images and 17 videos of child pornography on the laptop. He made copies of the computers' hard drives and gave them to Detective Bill Lynn, an expert in electronic forensics at the Bloomington Police Department. Detective Lynn found child pornography on both hard drives.

Price was charged with one count of producing child pornography, *see* 18 U.S.C. § 2251(a), and one count of possessing child pornography, *see id.* § 2252A(a)(5)(B). He moved to suppress the evidence obtained from his computers, arguing that he had consented only to the *seizure* of his laptop, not a search, and that an independent, untainted warrant was needed to search any of his computers. At the suppression hearing, he raised an additional argument, claiming that he had withdrawn his consent by leaving two phone messages for

Detective Morrow asking that his laptop be returned. The district court rejected these arguments and denied the suppression motion. The judge also credited the government's alternative arguments that the federal warrant was supported by independent, untainted probable cause and the child-pornography evidence would have been inevitably discovered.

At trial the government's main witnesses were R.P. and the law-enforcement officers involved in the investigation. Prosecutors also introduced some of the child pornography found on Price's computers. In brief, the record establishes the following: When Price was 13 years old, he began sexually abusing his sister J.P., who was then 8 years old. This abuse continued until J.P. was 14, ending when Price got married at age 19. Years later, in 1992, Price's third wife gave birth to R.P., his third child but first daughter.

When R.P. was 8 years old, Price took her to a presentation about modeling, where she learned she needed a portfolio of photographs if she wanted to become a model. Price told her he could take the necessary photos, but she needed to be naked or wearing lingerie in the photos. Price showed her some online photographs of other young girls, nude and with their legs spread, and told her she would need to pose in a similar fashion. When R.P. was between the ages of 10 and 12, Price took more than 100 photos of her naked or wearing little clothing.

Price also sexually molested R.P. during this time. Among other things, he touched her genitals as part of an "anatomy lesson"; he inserted his finger into her vagina, pretending to show her how to use a tampon; he applied yeast-infection

medication to her; and he fondled her breasts, pretending to perform a breast exam. Price also offered to teach R.P. how to masturbate and tried to persuade her to have sex with him. He asked if she would resist if he tried to have sex with her in her bedroom at night. He told her she could pretend to sleep through it.

An intercepted phone conversation between Price and his wife during this time revealed that he intended to make money by putting nude photos of R.P. on the Internet. Price did indeed create a website and put the photos online, and they have been seized in at least 160 child-pornography investigations in 36 states. For example, 17 images of R.P. were seized in a search of a computer in a child-pornography investigation in Nashville, Tennessee. Seven of the photos found on the Nashville suspect's computer matched photos of R.P. found on Price's laptop, and nine of them matched photos of her found on his desktop computer.

At trial the government introduced seven of the photographs of R.P. found on Price's computers. As the district court described them, the photos "depict R.P. posing in the nude or wearing her mother's lingerie, and many of the photographs focus on the genital area." The government also introduced 36 of the hundreds of other images of child pornography found on Price's computers, along with 17 child-pornography videos.

Price represented himself at trial and testified that the photos he took of R.P. were art, not pornography. He said he had been trying to imitate images from movies and had photographed R.P. nude to make her seem uninhibited and thus suitable for movie roles.

Both of the crimes charged in the indictment required the government to prove that the photographs depicted a minor engaged in "sexually explicit conduct." 18 U.S.C. § 2251(a) (production of child pornography); *id.* § 2252A(a)(5)(B) (possession of child pornography). The production count also required the government to prove that Price used or induced R.P. to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. *Id.* § 2251(a). The term "sexually explicit conduct" means actual or simulated sexual intercourse (the definition lists various types), bestiality, masturbation, "sadistic or masochistic abuse," and "lascivious exhibition of the genitals or pubic area of any person." *Id.* § 2256(2)(A). The district court's jury instruction on "lascivious exhibition" is the central issue on this appeal.

The judge instructed the jury that "lascivious exhibition" means the "indecent exposure of the genitals or pubic area, usually to incite lust." The instruction also explained that "[t]he genitals or pubic area do not have to be fully or partially uncovered for a visual depiction to be a lascivious exhibition." The jury was told to "consider the context and setting in which the genitalia or pubic area is being displayed" and that "[n]ot every exposure is a lascivious exhibition." Finally, the jury was instructed that the following factors may be considered in determining whether the photographs depicted a "lascivious exhibition":

> Factors you may consider include:
>
> - the overall content of the material;
>
> - whether the focal point of the visual depiction is on the minor's genitalia or pubic area;

- whether the setting of the depiction appears to be sexually suggestive—for example, in a location or in a pose associated with sexual activity;

- whether the minor appears to be displayed in an unnatural pose or in inappropriate attire;

- whether the minor is fully or partially clothed, or nude;

- whether the depiction appears to convey sexual coyness or an apparent willingness to engage in sexual activity; and

- whether the depiction appears to have been designed to elicit a sexual response in the viewer.

A visual depiction need not include all of these factors to be a lascivious exhibition.

These factors come from *Dost*, 636 F. Supp. at 832.

Price objected to the jury instruction, arguing that the *Dost* factors were "ex post facto" in that they introduced concepts not charged in the indictment or included in the statutory definition of "sexually explicit conduct." The judge overruled the objection.

The jury found Price guilty on both counts. In a special verdict on the production count, the jury was asked to decide whether seven specific images of R.P. depicted "sexually explicit conduct" as the court had defined that term. The jury found that five of the seven satisfied the definition.

At sentencing Price lodged a flurry of objections to the offense-level adjustments recommended in the presentence

report. The judge overruled some, and others became moot when Price's offense level exceeded the maximum of 43. With a criminal history category II, Price's guidelines sentence was life imprisonment, which was reduced to 40 years based on the statutory maximum of 30 years on the production count, the 10-year maximum on the possession count, and a guidelines recommendation that the sentence should be consecutive. *See* U.S.S.G. § 5G1.2(d).

Price's counsel argued that a sentence of 15 to 20 years would be appropriate. Price himself asked for the statutory minimum sentence of 15 years. *See* 18 U.S.C. § 2251(e) (prescribing a minimum sentence of 15 years on the production count for a defendant in Price's circumstances). The government urged the court to follow the guidelines recommendation and sentence Price to 40 years.

The judge weighed the sentencing factors listed in 18 U.S.C. § 3553(a) and at first seemed to give the aggravating factors great weight. She noted that Price stood convicted of the offense of *production* of child pornography as well as possession, making his case more serious than the average child-pornography offender's. Moreover, the crime involved his own prepubescent daughter, an extreme abuse of trust. To make matters worse, Price put photos of R.P. on the Internet, where they circulated widely, and apparently wanted to profit from them. He also molested R.P. on multiple occasions and repeatedly sexually abused his sister. The judge noted as well that Price had a prior conviction for soliciting a sex act, two DUI arrests, and various citations for traffic violations, but no felony convictions. Importantly, the judge viewed Price as

likely to "re-offend if given the opportunity to come into contact with young girls again," particularly because he refused to accept responsibility for his crimes and continued to maintain that he had done nothing wrong. The judge was not persuaded that Price had the potential to contribute to society and rejected his argument that leniency was warranted in light of certain medical conditions. Based on Price's disturbing behavior and the need for punishment and deterrence, and to protect the primary and secondary victims and the public at large, the judge rejected his argument for a sentence at the statutory minimum.

On the other hand, the judge said the 40-year guidelines sentence was longer than necessary to achieve the purposes of § 3553(a). This conclusion was largely based on the judge's view that the guidelines for child-pornography offenses are overly harsh as a policy matter. She explained that the child-pornography guidelines are not fully the product of the Sentencing Commission's empirical expertise; rather, Congress has controlled sentencing policy in this area by the use of mandatory minimums and by periodically directing an increase in child-pornography guidelines. She pointed out that § 2G2.1 and § 2G2.2—the offense-level guidelines for production and possession of child pornography, respectively—contain many enhancements that are virtually automatic because the triggering facts exist in nearly every child-pornography case.

Acknowledging the aggravated facts of Price's case, the judge was nonetheless convinced that a below-guidelines sentence was warranted in order to reserve the harshest

penalties for the worst child-pornography offenders—those who, for example, possess depictions of violent child sexual abuse or sadistic conduct. In the end the judge settled on a sentence of 18 years on the production count and a concurrent term of 6 years on the possession count.

Price appealed, and the government filed a cross-appeal challenging the below-guidelines sentence.

## II. Analysis

Price attacks his convictions on two grounds. First, he challenges the denial of his suppression motion. Second, he argues that the jury instruction on lascivious exhibition was legally erroneous, too broad, and improperly included the *Dost* factors. The government argues in its cross-appeal that the below-guidelines sentence is substantively unreasonable.

### A. Suppression Motion

Price argues that the plain language of the written consent-to-search form authorized only a contemporaneous search of the laptop by Detective Morrow herself, not a later forensic examination by other officers. This argument differs from the arguments Price made in the district court. In his suppression motion, Price maintained that his consent was limited to a seizure of the laptop, not a search; at the suppression hearing, he added a claim that he had withdrawn his consent. The district judge rejected these arguments, and Price does not reprise them on appeal. Rather, he argues that his consent was

limited to an immediate search by Detective Morrow herself and did not include a later search by other law-enforcement officers.

Because this argument was not raised below, our review is for plain error only. *See United States v. Middlebrook*, 553 F.3d 572, 577–78 (7th Cir. 2009). "[T]he plain error standard allows appellate courts to correct only particularly egregious errors for the purpose of preventing a miscarriage of justice. Even if there has been plain error, we will not reverse unless the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Id.* at 578 (internal quotation marks and citation omitted).

There was no error. Price's new scope-of-consent argument is factually and legally unsupported. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). "The scope of a search is generally defined by its expressed object." *Id.* A reasonable person in Price's situation would have understood that the consent granted encompassed a full forensic search of the laptop by a qualified law-enforcement agent off the premises whenever such an officer was available.

Detective Morrow testified that she explained to Price that she wasn't trained in computer forensics and that other law-enforcement officers would have to conduct the search of the laptop. The district judge credited this testimony, and that exchange—along with the consent form itself, which referred

to a "complete search" of the laptop—led the judge to reject Price's claim that he consented to a *seizure* but not a search. The same evidence defeats Price's new argument that his consent was limited to an immediate search by Detective Morrow alone.

Price does not challenge this evidence. Instead, he argues that the oral exchange with Detective Morrow conflicts with the language of the written consent form, and the writing trumps the oral consent. The Springfield Police Department's consent form is a standardized document obviously designed for use in a variety of situations. The form states that the consenting party voluntarily authorizes the listed Springfield police officer to conduct "a complete search" of the identified property "*at this time*." (Emphasis added.) Price argues that by using the phrase "at this time" and listing Detective Morrow and no other officer, the written form effectively limited the scope of his consent to an immediate search by Morrow only.

That's not what a reasonable person would have understood in these circumstances. Detective Morrow had just explained that she lacked the training to search the laptop herself and would have to take it to other officers with expertise in computer forensics. On Price's interpretation of the facts, the consent form limited the scope of his consent to a search that he knew *could not take place*. No reasonable person would share that view, which reduces the consent to a meaningless exercise.

Instead, a reasonable person would have understood the scope of the consent in light of the officer's request, which sought permission to take the laptop to properly trained

officers who would conduct a complete forensic search. The district court did not plainly err in holding that Price voluntarily consented to the search of his laptop; the consent was not limited to an immediate search by Detective Morrow alone. Price's suppression motion was properly denied.

## B. Jury Instruction on Lascivious Exhibition

The federal child-exploitation statute prohibits the use or inducement of a child to engage in sexually explicit conduct for the purpose of photographing the conduct if the producer of the photograph knows or has reason to know that it will be transported or transmitted in interstate or foreign commerce. *See* 18 U.S.C. § 2251(a). More specifically, as relevant here, § 2251(a) makes it a crime to

> employ[], use[], persuade[], induce[], entice[], or coerce[] *any minor to engage in … any sexually explicit conduct for the purpose of producing any visual depiction of such conduct …* if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce.

*Id.* (emphasis added).

Federal law also prohibits the possession of child pornography if the pornographic material has been mailed, shipped, or transported in interstate or foreign commerce by any means—including by computer—or is otherwise in or affects interstate

commerce. *See id.* § 2252A(a)(5)(B). "Child pornography" is defined as "any visual depiction" the production of which "involves the use of a minor engaging in sexually explicit conduct." *Id.* § 2256(8)(A).

The term "sexually explicit conduct"—common to both the production and possession offenses—means actual or simulated sexual intercourse (of various descriptions), bestiality, masturbation, "sadistic or masochistic abuse,"or "lascivious exhibition of the genitals or pubic area of any person." *Id.* § 2256(2)(A). The last entry on the list—"lascivious exhibition of the genitals or pubic area"—is the main focus of this appeal.

Price argues that the district court's jury instruction on lascivious exhibition was legally wrong, unconstitutional, or at least misleading to the extent that it incorporated the *Dost* factors. Once again, these arguments differ from the arguments Price made in the district court. There Price objected to the judge's proposal to instruct the jury on the *Dost* factors, arguing that the factors were "ex post facto" in that they were neither charged in the indictment nor included in the statutory language. The district court rejected these arguments, and Price has abandoned them on appeal. We review Price's new arguments under the plain-error standard, and again we find no error.

We note for starters that Price's complaints about the jury instruction apparently relate only to his conviction for producing child pornography, *not* his conviction for possessing child pornography. On the production count, Price claimed that the photos he took of R.P. were art, not pornography. He has never argued that the 36 images and 17 videos submitted on

the possession count are not sexually explicit as that term is defined in § 2256(2)(A). Indeed, no serious argument to that effect could be made. Accordingly, we understand Price's claim of instructional error to be limited to his conviction for producing child pornography.

Price argues first that the judge erred by instructing the jury that "[t]he genitals or pubic area do not have to be fully or partially uncovered for a visual depiction to be a lascivious exhibition." He maintains that to be a lascivious exhibition, a visual depiction of the genitals or pubic area requires full exposure without any covering at all, no matter how minimal or transparent. In other words, full nudity is required for an exhibition of the genitals or pubic area to count as "lascivious." Or so the argument goes.

This argument reads a limitation into § 2256(2)(A) that does not appear anywhere in its text. There is no nudity requirement in the statutory definition of "sexually explicit conduct," of which "lascivious exhibition of the genitals or pubic area" is a part. Price insists that the plain meaning of "exhibition" suggests a requirement that the genitals or pubic area be completely uncovered. Not so. The ordinary understanding of the word "exhibition" as used in this context is a "showing or presenting to view." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 678 (new rev. ed. 1996). The ordinary meaning of the statutory text does not imply a

requirement of complete nudity. The jury instruction did not erroneously state the law.[1]

Price next contends that under *United States v. Stevens*, 559 U.S. 460 (2010), sexually explicit photographs of children are protected expression under the First Amendment unless they depict criminal abuse of a child such as sexual assault, molestation, or other physical abuse. If this reading of *Stevens* is correct, then the jury instruction on lascivious exhibition was constitutionally overbroad because it did not limit the term to depictions of criminal abuse of a child.

Price's reading of *Stevens* is incorrect. Child pornography is categorically unprotected by the First Amendment, *see New York v. Ferber*, 458 U.S. 747, 763 (1982), and *Stevens* did not change that understanding. Indeed, *Stevens* had little to say about child pornography at all; the case involved a First Amendment challenge to a federal statute aimed at curbing the interstate market in "crush videos"—films that feature the torture and killing of animals. 559 U.S. at 465–66.

The statute at issue in *Stevens* criminalized the creation, sale, and possession of any "depiction of animal cruelty" if done "for commercial gain" in interstate or foreign commerce. *Id*. at 464–65 (quoting 18 U.S.C. § 48). The government argued that depictions of animal cruelty are categorically outside the reach of the First Amendment because their social value is

---

[1] We're not sure how Price's preferred reading of the statute actually helps him. Although R.P. wears skimpy, transparent lingerie in some of the photos submitted at trial, she is completely nude in one of the photos the jury found to be sexually explicit.

slight and overwhelmingly outweighed by society's interest in protecting against the mistreatment of animals. *Id.* at 469. The Court rejected this categorical argument: "When we have identified categories of speech as fully outside the protection of the First Amendment, it has not been on the basis of a simple cost-benefit analysis." *Id.* at 471.

In this part of its discussion, the Court mentioned child pornography, but it did so only in passing, and then only to reject an analogy between it and depictions of animal cruelty and to decline the government's invitation to recognize the latter as a new category of unprotected speech. *Id*. at 471–72.

To explain why child pornography is different, the Court emphasized that "*Ferber* presented a special case: The market for child pornography was 'intrinsically related' to the underlying abuse, and was therefore 'an integral part of the production of such materials, an activity illegal throughout the Nation." *Id.* at 471 (quoting *Ferber*, 458 U.S. at 759). Speech integral to criminal conduct is historically recognized as unprotected. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). The Court explained that *Ferber*'s analysis of child pornography is "grounded … in [this] previously recognized, long-established category of unprotected speech." *Stevens*, 559 U.S. at 471. But the Court cautioned that "*Ferber* and other cases cannot be taken as establishing a freewheeling authority to declare new categories of speech outside the scope of the First Amendment" based on a "highly manipulable balancing test." *Id.* at 472.

Nothing in this brief discussion addresses the definition of child pornography or limits the category to visual depictions

of criminal child abuse. Child pornography remains categorically unprotected and thus fully proscribable. *Stevens* did not suddenly confer First Amendment protection on *some* child pornography—i.e., pornographic images that stop short of depicting illegal child abuse. That would have been a significant doctrinal development, and not likely to be hidden in a case about crush videos.

Finally, Price contends that the jury instruction was misleading because it incorporated the *Dost* factors. Some circuits have endorsed the California district court's decision in *Dost* as a helpful elaboration of the meaning of "lascivious exhibition" in § 2256(2)(A)(v), but our circuit neither approved nor disapproved the use of the *Dost* factors. *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011). We have held, however, that it is not plain error to instruct the jury using the *Dost* factors. *Id.* (citing *United States v. Noel*, 581 F.3d 490, 499–500 (7th Cir. 2009)). That's enough to resolve Price's claim. For completeness, however, we touch briefly on Price's arguments to explain why they make no difference here.

Price argues as a general matter that the *Dost* factors improperly limit the jury's consideration of the entire context of the images. Whether the *Dost* factors have this effect is beside the point here. The judge specifically instructed the jurors that they "*must* consider the context and setting in which the genitalia or pubic area is being displayed." (Emphasis added.)

Price also takes issue with two of the *Dost* factors in particular. First, he objects to instructing the jury that it may consider "whether the minor is fully or partially clothed, or

nude." He says this factor is misleading because nudity alone does not make a display lascivious. But the district court acknowledged this very point, specifically instructing the jury that not every exposure is a lascivious exhibition, and that "context and setting" must be considered.

Second, Price objects to instructing the jury that it may consider "whether the depiction appears to have been designed to elicit a sexual response in the viewer." He claims that this factor invites improper thought policing. To the contrary, we held in *Russell* that the "intent and motive of the photographer can be a relevant consideration" in evaluating whether an image depicts a lascivious display within the meaning of § 2256(2)(A)(v). 662 F.3d at 843. We cautioned in *Russell* that the "relevance of a defendant's motive and intent will turn on the facts of the case." *Id.* at 844. But we also said that "at least in some circumstances, evidence of motive and intent will help to place an image in context, especially where, as here, there is evidence that the photographer posed the minor in such [a] way that her genitals are visible but has disclaimed any intent to create a sexually suggestive image." *Id.* That describes this case.

Accordingly, the district court did not commit plain error by including the *Dost* factors in the jury instruction on lascivious exhibition. This holding should not be understood, however, as an endorsement of the *Dost* factors. Our circuit's pattern instruction tracks the statutory language of "sexually explicit conduct" without embellishment. *See* Pattern Criminal Jury Instructions of the Seventh Circuit, 18 U.S.C. § 2256(2)(A), at 604 (2012). We have noted before that the *Dost* factors are the

subject of ongoing debate among the circuits. *United States v. Noel*, 581 F.3d 490, 499–500 (7th Cir. 2009). Some view the factors as overly generous to defendants; others suggest that in some cases the *Dost* factors may have the effect of expanding the scope of the term "lascivious exhibition." *Id.*

This case does not require us to determine whether the *Dost* factors are always or never permissible, but we do take this opportunity to discourage their routine use. Our concern is that the factors may not helpfully elucidate the statutory standard, which is clear enough on its face. The term "lascivious" is not vague. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994) ("Respondents argue that § 2256 is unconstitutionally vague and overbroad … because Congress [in a 1984 amendment] replaced the term 'lewd' with the term 'lascivious' in defining illegal exhibition of the genitals of children. We regard these claims as insubstantial and reject them … .").

Instructing a jury on the *Dost* factors can seem like a command to take a detailed and mechanical walk through a checklist, which risks taking the inquiry far afield from the already clear statutory text. Instead of focusing on a common-sense understanding of "lascivious exhibition," the jurors may be led deep into the weeds of evaluating degrees of nudity, or asking whether an image conveys sexual coyness, expresses a willingness to engage in sexual activity, or depicts a pose or a place associated with sexual activity. These case- and context-specific factors are better left to the closing arguments of counsel. The jury's common understanding is enough to

distinguish artistic and other licit photos of children from child pornography as that term is defined in the statutory text.

## C. The Government's Cross-Appeal

The government argues in its cross-appeal that Price's 18-year sentence—less than half the 40-year guidelines sentence—is substantively unreasonable. The district court has broad discretion to impose a nonguidelines sentence; our review looks only for abuse of that discretion. *United States v. Schuster*, 706 F.3d 800, 808–09 (7th Cir. 2013). "A sentence is reasonable if the district court gives meaningful consideration to the factors enumerated in 18 U.S.C. § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Reyes-Medina*, 683 F.3d 837, 842–43 (7th Cir. 2012) (internal quotation marks omitted).

It is by now well understood that the district court's sentencing discretion includes the option to vary from the guidelines "based on a *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264 (2009); *see also Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Although this principle was established in the context of judicial disagreement with the crack-cocaine guidelines, it applies with equal force to other sentencing guidelines: "We understand *Kimbrough* and *Spears* to mean that district judges are at liberty to reject *any* Guideline

on policy grounds—though they must act reasonably when using that power." *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc). And the "district courts are certainly free to disagree with the child pornography Guidelines as applied to a particular case as long as the sentence imposed is reasonable." *United States v. Pape*, 601 F.3d 743, 745 (7th Cir. 2010).

The district judge did exactly what she was supposed to do under the advisory guidelines regime. She correctly calculated the guidelines sentence and exhaustively considered the § 3553(a) factors, giving particular emphasis to the aggravated facts of this case. But she also exercised her discretion to consider the scholarly and judicial criticism of the guidelines for child-pornography offenses, as she is permitted to do. She expressed substantial agreement with the Second Circuit's opinion in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), which explained that the guidelines in this area are not the product of the Sentencing Commission's empirical expertise, but rather reflect directions from Congress to punish these crimes more harshly, *id.* at 182. *Dorvee* also notes that § 2G2.2, the guideline for possession of child pornography, calls for the application of multiple enhancements that apply in almost every case, making inadequate distinctions between the worst offenders and those who are less dangerous. *Id.* at 186–87.

The judge acknowledged that most of the criticism of the child-pornography guidelines is aimed at § 2G2.2, the guideline for the possession offense. But she concluded that § 2G2.1, the guideline for production of child pornography, "presents some of the same problems." Both guidelines, she said, are

vulnerable to the critique that they are not the product of the Sentencing Commission's empirical study and independent policy judgment. She also noted that both guidelines call for enhancements that apply in nearly every case, exerting virtually automatic upward pressure on sentences and failing to separate less dangerous offenders from those who are more dangerous.

We have said before that the concerns expressed in *Dorvee* "can certainly be taken into account by district judges when exercising their sentencing discretion under the now advisory guidelines." *United States v. Mantanes*, 632 F.3d 372, 377 (7th Cir. 2011). That's what the judge did here.

The government objects that Price's 18-year sentence is only three years above the 15-year statutory minimum. *See* § 2251(e). Canvassing the aggravated facts of the case and Price's history of sexually abusing children, the government argues that the sentence strays too far from the 40-year guidelines sentence and is simply too low to be considered substantively reasonable. "At the very least," the government maintains, the sentences for the production and possession counts should be consecutive, as the guidelines recommend. *See* § 5G1.2(d).

Price's crimes are indeed deplorable, and a sentence of 18 years obviously represents a substantial variance from the recommended 40-year term. But there is room for policy-based disagreement with the guidelines even to this extent. The government has not established that the sentence exceeds the boundaries of reasoned discretion. More specifically, the government has not established that an 18-year sentence for

Price's crimes—even in light of his contemptible history and unrepentant nature—is so low as to be substantively unreasonable.

AFFIRMED.