[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17205
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-00054-CG-B-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JEREMIAH HUNTER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(December 29, 2017)

Before HULL, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In February 2016, Defendant Jeremiah Hunter, a teacher and cheerleading coach at Hankins Middle School, asked his student C.J.[1] to send him nude photographs of other male students.  C.J. texted Defendant nude photographs of three thirteen and fourteen-year old boys.  Based on this conduct, the jury convicted Defendant on one count of knowingly receiving images of child pornography through interstate commerce in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1).  Defendant appeals, arguing that there was insufficient evidence that the photographs he received satisfy the statutory definition of child pornography.  After careful review, we affirm.

## I.  BACKGROUND

### A.  Factual Background[2]

Defendant was a science teacher and cheerleading coach at Hankins Middle School.  He regularly talked with some of his students about non-school related topics over text and social media.  Defendant was especially close with students C.J. and H.S.  At the time of these events, C.J. and H.S. were male eighth graders on Defendant's cheerleading team and in Defendant's science class.  On January 13, 2016, Defendant let C.J. and H.S. skip physical education during fourth period.

---

[1]  The minors are identified by their initials.

[2]  Because the jury found Defendant guilty of the present charge, the facts are presented in the light most favorable to the Government, with all reasonable inferences and credibility determinations resolved in favor of the jury's verdict.  *United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011).

Instead of attending physical education, C.J. and H.S. hung out in Defendant's classroom and helped him set up a laboratory experiment that the class would conduct that afternoon.  While they were setting up, C.J. told Defendant that some of the girls on the cheerleading team were sending nude pictures of themselves to other students.  C.J. showed Defendant a picture of a nude male on his phone.  The person's face was not visible, but C.J. informed Defendant that it was a picture of C.S., another student in Defendant's class.

Defendant testified that he verbally told C.J. to get rid of the picture.  But later that afternoon, Defendant texted C.J. asking for the photograph, saying: "Send me one of those pics.  I'm going to ask [C.S.] if he's sending that.  I won't tell him it's from you."  Before he heard back from C.J., Defendant asked C.S. if he was sending out inappropriate pictures of himself and C.S. replied that he was not.  Defendant testified that as C.J. was leaving school, he again told C.J. to get rid of the pictures.  But about twenty minutes later, C.J. texted Defendant three photographs of a nude male student.  Defendant saw the text when he arrived home from school.

Approximately three hours later, Defendant texted C.J. back.  Within the first minute of their conversation, Defendant asked C.J. to send him photographs of students he knew, saying "I wanna see peeps I know."  Defendant and C.J. then discussed the sizes of male students' genitalia.  They discussed whether certain

students were big or small, how many inches they were, and how many inches they were when they were aroused. Defendant told C.J. that he had previously seen pictures and videos of other nude students. Defendant described what another student's genitalia and butt looked like. Defendant also told C.J. that another male student had shown Defendant a video of himself masturbating. Defendant repeatedly stated that he wanted to see pictures of students he knew. He even asked for photographs of a specific student, saying "I wanna see [T.U.] . . . Get them." C.J. sent Defendant more photographs.

C.J. sent Defendant pictures of three male students, C.S., C.Z., and N.W. At the time they took the pictures, C.S. and C.Z. were fourteen years old and N.W. was thirteen years old. C.S. and N.W. were both in Defendant's science class and C.Z. was on Defendant's cheerleading team. C.S., C.Z., and N.W. all took the photographs of themselves. C.J. sent Defendant three photographs of C.S. in the bathroom. In all three photographs, C.S.'s face is not visible. The photographs are focused on C.S.'s genitalia and he is aroused. In two of the photographs, C.S. is holding himself. C.J. sent Defendant four photographs of C.Z. in the bathtub. In two of the photographs, C.Z.'s face is visible and his genitalia are just out of the camera's view. One photograph shows most of C.Z.'s body with his hand covering his genitalia. The final photograph shows C.Z.'s chest and lower body with his genitalia visible. C.J. also sent Defendant four photographs of N.W. One

4

photograph shows N.W.'s chest and underwear and another shows his face and chest.  Two photographs are focused on N.W.'s aroused genitalia.  In both, N.W. is using his hand to display himself for the camera.

Defendant never reported these photographs.  Hankins Middle School requires teachers to report all material from students involving "sexual acts," but Defendant did not tell other teachers, the principal, or the students' parents about the photographs.

Approximately one month after C.J. sent Defendant the photographs, Defendant texted with H.S.  Defendant implied that he was masturbating and asked H.S. if he wanted to join.  Defendant and H.S. discussed nude and dirty photographs of other students.  Defendant told H.S., "I wanna see these pics[.]  I'm serious."  When H.S. didn't reply, Defendant said, "[Y]ou are no help[.]  You are killing me!!!!!!!!!!"  Defendant also sent H.S. photographs using Snapchat[3] and asked H.S. to delete previous conversations they had had on Facebook.

On February 18, 2016, the Mobile County Sherriff's Office executed a search warrant of Defendant's house and seized his phone and computer.  A special agent from the Federal Bureau of Investigation analyzed Defendant's phone and found the texts and photographs described above.  The agent also looked at Defendant's internet search history.  Defendant had multiple

---

[3]  Snapchat is a photo-sharing application that does not save the photographs that are sent.

pornography websites bookmarked, including videos involving teenagers.    He visited pornography websites involving teenagers, young boys, and "really young boy[s]."

### B.  Procedural History

On March 31, 2016, a grand jury indicted Defendant on one count of knowingly receiving images of child pornography through interstate commerce in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1).  At trial, the Government presented testimony from multiple law enforcement officers and introduced the texts and photographs described above.  C.S., C.Z., and N.W. testified that the nude photographs that C.J. sent Defendant are pictures of them.  At the close of the Government's case, Defendant moved for judgment of acquittal and the court denied the motion.  Defendant then testified.  He admitted that he received nude photographs from C.J.:

> Question:  Sir, you admit that that cell phone that's been introduced into evidence is yours; correct?
>
> Answer:  Yes.
>
> Q:  And you received the text messages from CJ?
>
> A:  Yes ma'am.
>
> . . . .
>
> Q:  You received the images that focused on the penises of little boys?
>
> A:  Yes.

6

Defendant testified that he didn't think that the photographs were "sexual acts" and that he wasn't turned on by the pictures:

Question:  Okay.  How did that picture affect you?

Answer:  It didn't.

Q:  It wasn't a big turn-on?

A:  No.

But Defendant admitted that he found the pornography websites he visited featuring teenagers and young boys to be "sexually arousing."

Defendant testified that he asked C.J. for the photographs so that he could investigate whether students were sending nude pictures of themselves.  He stated that he commented on what students looked like nude and on how big various students were in order to determine if the photographs were real.  Defendant testified that he wanted this information in order to inform the principal and students' parents that students were sending out nude photographs.  However, Defendant admitted that he never reported the photographs.  He did not tell other teachers, the principal, or students' parents.

At the close of all evidence, Defendant renewed his motion for judgment of acquittal.  The court denied the motion and the jury found Defendant guilty on one count of knowingly receiving child pornography in violation of 18 U.S.C.

§ 2252A(a)(2) and (b)(1).  The court sentenced Defendant to 120 months'
imprisonment.

## II.  DISCUSSION

Defendant argues that the district court erred in denying his motions for
judgment of acquittal because there was insufficient evidence to convict.
Specifically, Defendant argues that the photographs he received from C.J. do not
meet the statutory definition of child pornography.  We affirm, concluding that
there was sufficient evidence for the jury to convict Defendant of knowingly
receiving images of child pornography through interstate commerce.

### A.  Sufficiency of the Evidence

We review sufficiency of the evidence *de novo,* viewing all evidence in the
Government's favor and drawing all inferences and credibility determinations in
favor of the jury's verdict.  *United States v. Grzybowicz,* 747 F.3d 1296, 1304
(11th Cir. 2014).  A verdict is supported by sufficient evidence if a reasonable jury
could find that the evidence established guilt beyond a reasonable doubt.  *United
States v. Smith,* 459 F.3d 1276, 1286 (11th Cir. 2006).  The jury may choose
between reasonable constructions of the evidence.  *United States v. Williams,* 390
F.3d 1319, 1323 (11th Cir. 2004); *United States v. Perez-Tosta,* 36 F.3d 1552,
1556–57 (11th Cir. 1994) ("For the evidence to support a conviction, it need not
exclude every reasonable hypothesis of innocence or be wholly inconsistent with

8

every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.") (quotation marks omitted).  We only reverse for lack of sufficient evidence if there was not enough evidence for a reasonable factfinder to find guilt beyond a reasonable doubt. *United States v. Young*, 39 F.3d 1561, 1565 (11th Cir. 1994).

If a defendant chooses to testify on his own behalf, any statements he makes, "if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (emphasis in original).  *See also Williams,* 390 F.3d at 1325 ("Defendants in criminal trials are not obliged to testify. And a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case.") (quotation marks omitted).  In hearing the defendant's words and seeing his demeanor, the jury is entitled to not only disbelieve the defendant, but to believe the opposite of what the defendant said.  *Brown*, 53 F.3d at 314; *Williams*, 390 F.3d at 1325–26.

## B.  18 U.S.C. § 2252A(a)(2)(A)

Under 18 U.S.C. § 2252A(a)(2)(A), it is unlawful for any person to "knowingly receive[ ] or distribute[ ] any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."  Child pornography is "any visual depiction, including any

photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2256(8)(A). To establish a violation, the Government therefore must prove that Defendant knowingly received an image of a minor engaging in sexually explicit conduct and that such image was transported through interstate commerce.  *See* 18 U.S.C. § 2252A(a)(2)(A); 18 U.S.C. § 2256(8)(A).  Defendant challenges whether there was sufficient evidence that the photographs he received display sexually explicit conduct.  He argues that while the photographs contain nudity, they are not sexually explicit.

Sexually explicit conduct is "actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. § 2256(2)(A).  The parties agree that the pictures Defendant received from C.J. are not intercourse, bestiality, masturbation, or abuse.  Thus, the only issue on appeal is whether there was sufficient evidence for the jury to conclude that the photographs qualify as a "lascivious exhibition of the genitals or pubic area of any person."

10

1. Lascivious Exhibition

A lascivious exhibition is one that "potentially 'excites sexual desires' or is 'salacious.'" *Grzybowicz*, 747 F.3d at 1305–06 (alternation accepted). *See also United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285 (2008). A photograph can picture a naked child without being lascivious. *Williams*, 444 F.3d at 1299; *United States v. Kemmerling*, 285 F.3d 644, 645–46 (8th Cir. 2002) ("more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the statute"). But, on the other hand, a photograph can be lascivious even if the child is not naked and the depiction is not "dirty." *Williams*, 444 F.3d at 1299. Photographs are blatantly lascivious if the defendant "cannot and has not suggested any non-sexual purpose [the photographs] might have served or how they might possibly be viewed as non-sexual" and if it would be "unreasonable and utterly contrary to the evidence" for a jury to find that the photographs are not lascivious. *Grzybowicz*, 747 F.3d at 1307.

The vast majority of circuits utilize a multi-factor test, known as the *Dost* test,[4] to determine if there was sufficient evidence for a jury to conclude that a photograph is a lascivious exhibition. *See United States v. Amirault*, 173 F.3d 28, 31–32 (1st Cir. 1999); *United States v. Rivera*, 546 F.3d 245, 249 (2d Cir. 2008); *United States v. Larkin*, 629 F.3d 177, 182 (3d Cir. 2010); *United States v. McCall*,

---

[4] *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986).

833 F.3d 560, 563–64 (5th Cir. 2016); *United States v. Daniels*, 653 F.3d 399, 407 (6th Cir. 2011); *United States v. Wallenfang*, 568 F.3d 649, 657–58 (8th Cir. 2009); *United States v. Overton*, 573 F.3d 679, 686–87 (9th Cir. 2009); *United States v. Wells*, 843 F.3d 1251, 1253–54 (10th Cir. 2016).  *Contra United States v. Price*, 775 F.3d 828, 839–40 (7th Cir. 2014) ("This case does not require us to determine whether the *Dost* factors are always or never permissible, but we do take this opportunity to discourage their routine use.").  On two previous occasions, we acknowledged that many courts use the *Dost* test, but did not decide whether *Dost* applies in this circuit.  *See Grzybowicz*, 747 F.3d at 1306 & n.8 ("While the parties ask us to consider a non-exclusive list of six factors, known as the *Dost* factors, to define lasciviousness, this case does not require a multi-factor analysis."); *Williams*, 444 F.3d at 1299 n.62 ("Virtually all lower courts that have addressed the meaning of 'lascivious exhibition' have embraced the widely followed 'Dost' test.").  We also provide the *Dost* factors as the definition of lascivious exhibition in our model jury instructions for this crime.  *See* 11th Cir. Pattern Jury Instr. (Crim.) 83.4A (2010).  As both Defendant and the Government use the *Dost* factors in analyzing this question, we will likewise consider these factors to determine if the photographs Defendant received from C.J. are a lascivious exhibition.

12

To determine if there was sufficient evidence for a jury to conclude that a photograph is a lascivious exhibition of genitals, the *Dost* test looks to six factors:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).  A photograph can be lascivious even if all six factors are not met.  *Id.*  And the court may look to other relevant factors.  *Id.*; *Overton*, 573 F.3d at 686 ("The *Dost* factors . . . are neither exclusive nor conclusive, but operate as merely 'a starting point.'").

   2. Analysis

The photographs Defendant received from C.J. satisfy all six *Dost* factors: First, the focal point of many of the pictures is on the student's genitalia.  Many do not picture the student's faces.  Instead, the main or only image in the photographs is the student's genitalia.  Second, the pictures of C.S. and C.Z. were taken in the bathroom, a place where nudity regularly occurs and which can be associated with

13

sexual activity. *See generally United States v. Holmes*, 814 F.3d 1246 (11th Cir. 2016) (holding that photographs taken of a child in her bathroom are a lascivious exhibition); *Larkin*, 629 F.3d at 183 ("[S]howers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film. It is potentially as much of a setting for fantasy sexual activity as is an adult's bedroom."). Next, the students are not naturally posed. In many of the photographs, the students are displaying their genitalia for the camera. Many picture the students holding themselves or using their hand to display their genitalia. Fourth, in most of the photographs, the students are completely nude. Fifth, many images show the students aroused, which suggests sexual coyness or a willingness to engage in sexual activity. Finally, we can infer that the photographs are intended or designed to elicit a sexual response from the viewer because the students displayed themselves for the camera, are aroused, and sent the pictures to other students. *See Overton*, 573 F.3d at 687 (inferring intent to elicit a sexual response from the child's pose and the photograph's focus on the child's genitalia); *Wallenfang*, 568 F.3d at 659–60 (inferring intent to elicit a sexual response from the fact that the photographs were shared on a website devoted to sexual images).

Further, there was sufficient evidence for the jury to conclude that Defendant himself was sexually aroused by the photographs. Defendant asked his student C.J. to send him the photographs while discussing the size and appearance

14

of students' genitalia. Defendant even asked for photographs of a specific student and told C.J. that he had viewed photographs and videos of nude students before. After receiving these photographs, Defendant asked another student H.S. to send him additional nude pictures. Defendant also implied to H.S. that he was masturbating and asked if H.S. wanted to join. Further, Defendant watched and was aroused by online pornography involving teenagers and young boys. Although Defendant testified that he was not turned on by the photographs C.J. sent him, the jury was free to disbelieve Defendant and "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *Brown*, 53 F.3d at 314 (emphasis in original). *See also United States v. McCarrick*, 294 F.3d 1286, 1293 (11th Cir. 2002) ("[I]n combination with other evidence, the jury's disbelief of a defendant's testimony may be used to help establish his guilt.") (emphasis omitted).

In sum, the photographs Defendant received from C.J. satisfy all six *Dost* factors. There was sufficient evidence for the jury to conclude that the photographs are a lascivious exhibition of the student's genitalia and therefore meet the statutory definition of child pornography.

## CONCLUSION

For the above reasons, we conclude that there was sufficient evidence for the jury to find that Defendant violated 18 U.S.C. § 2252A(a)(2) and (b)(1) by

15

knowingly receiving images of child pornography through interstate commerce.

We therefore **AFFIRM.**