**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4005

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MICHAEL P. JOHNSON,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  M. Hannah Lauck, District Judge.  (3:15-cr-00091-MHL-1)

Argued:  December 8, 2016                     Decided:  February 28, 2017

Before MOTZ and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Robert James Wagner, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Thomas Kennerly Johnstone, IV, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael P. Johnson produced a video depicting him and a prepubescent victim engaging in sexual conduct. Upon its acceptance of Johnson's guilty plea to one count of production of child pornography, the district court sentenced Johnson to 360 months' imprisonment and ordered $85,800 in restitution. The sentence was based in part on a four-level offense level enhancement for producing or involving material depicting sadistic, masochistic, or violent conduct (the "S&M enhancement"). Of the restitution award, $78,000 was allocated for the victim's future mental health therapy sessions. On appeal, Johnson challenges the application of the S&M enhancement as well as the portion of the restitution amount awarded to the victim for the costs of therapy. Finding no error, we affirm.

I

In December 2014, the Federal Bureau of Investigation ("FBI") received information that a computer located in central Virginia had downloaded and uploaded child pornography. Using a unique screen name, this computer had made 632 posts on a child pornography trafficking website from early 2013 until late 2014. The FBI ultimately tracked the location of this computer to Johnson's residence in Stafford County, Virginia. On April 22, 2015, the FBI executed a search warrant for Johnson's residence.

During the search, Johnson agreed to be interviewed by FBI agents. He admitted to collecting child pornography, using the unique screen name identified by the FBI, and making the posts under investigation. He continued the interview at the FBI's office in

Fredericksburg, Virginia, where he signed a written waiver of his *Miranda* rights. There, Johnson admitted to past sexual conduct with his prepubescent daughter ("the victim") from the time she was five years old until early 2014, when she was seven years old. Johnson stated that he had been naked with her, gave her a pink vibrator, digitally penetrated the victim's vagina, had her perform oral sex on him, performed oral sex on her, and engaged in vaginal sexual intercourse with her. He also admitted to photographing and recording his sexual conduct with the victim. Johnson asserted he had stopped molesting the victim approximately one year before the search of his residence.

Johnson agreed to write a statement detailing his sexual contact with the victim. At first, Johnson estimated he had initiated nine to thirteen sexual encounters with the victim. When asked further about this frequency, Johnson revised that estimate to be higher than thirteen but fewer than twenty-five. Johnson also prepared four drawings that depicted how far his penis, tongue, and finger entered the victim's vagina, as well as how far his penis entered the victim's mouth. In one drawing, Johnson indicated that his penis entered the victim's vagina approximately five or six times.

During the search of Johnson's residence, the FBI seized numerous pieces of computer equipment, including an eight-terabyte capacity storage device named "Pluto." From this device, agents recovered approximately 260 images and 102 videos depicting the victim engaged in sexually-explicit conduct. The Pluto device also contained approximately 146,000 images and 22,000 videos of child pornography, including sixty-six images and fifty-four videos that were characterized by the government as containing sadistic or masochistic content. During the search of Johnson's residence, agents also

4

seized a Panasonic video camera that contained a forty-three-minute video of Johnson with the victim. The video had a date stamp of July 26, 2011, when the victim would have been four-and-a-half years old, but the video appeared to have been produced in three different installments over time. The video depicts: Johnson using a pink vibrator on the victim; the victim performing oral sex on Johnson and submitting to oral sex from Johnson; Johnson digitally penetrating the victim's vagina; and Johnson and the victim engaging in motions suggestive of vaginal sexual intercourse.

On May 19, 2015, Johnson was indicted on one count of production of child pornography in violation of 18 U.S.C. § 2251(a). The above mentioned forty-three-minute video served as the basis for his indictment. On July 8, 2015, Johnson pled guilty to this offense. The presentence report recommended various enhancements to his sentence, including the four-level S&M enhancement. These calculations yielded a total offense level of forty-three and a guideline range of life imprisonment that was restricted to a statutory maximum of 360 months. Johnson objected to the four-level S&M enhancement.[1] After conducting multiple sentencing hearings and receiving supplemental briefs, the district court overruled Johnson's objection. The court ultimately imposed the statutory maximum sentence of 360 months to be followed by a life term of supervised release.

The district court deferred the issue of restitution until after it had imposed its custodial sentence. The government argued that the victim was owed $78,000 for future

---

[1] Johnson also objected to the two-level distribution enhancement, which was ultimately sustained by the district court.

therapy costs, and it submitted a letter from the victim's guardian *ad litem* ("the guardian") in support of this position. Based on the recommendation that the victim would need one therapy session per week for the next ten years (until she reached the age of eighteen), the guardian calculated a total projected sum of $78,000. Johnson argued that the government's submission was too speculative to carry its burden. The district court, however, determined that the letter supported the proposed restitution amount with reasonable certainty. Along with a $7,800 award to the Virginia Criminal Injuries Compensation Fund, which would provide that amount to the victim's mother to partially compensate for lost wages, the district court ordered a total restitution award of $85,800.

Johnson timely appealed the sentence and restitution award.

## II

We first address Johnson's challenge to the four-level S&M enhancement imposed by the district court. When assessing a district court's application of the Sentencing Guidelines, we review the court's factual findings for clear error and we review its legal conclusions de novo. *United States v. Burgess*, 684 F.3d 445, 454 (4th Cir. 2012).

## A

Section 2G2.1(b)(4) of the U.S. Sentencing Guidelines provides a four-level enhancement "[i]f the offense involved material that . . . portrays sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.1(b)(4)(A).[2] "Material" is

---

[2] An identical four-level enhancement is available for trafficking rather than producing materials that portray sadistic or masochistic conduct. *See* U.S.S.G. § 2G2.2(b)(4)(A). Sections 2G2.2(b)(4) and 2G2.1(b)(4) were renumbered in 2004 from

defined to include "a visual depiction," and "minor" includes any individual "who had not attained the age of 18 years." *Id.* cmt. n.1. In this case, the district court applied the above enhancement for two reasons. First, it found that the forty-three-minute video produced by Johnson depicted sadistic conduct. Second, it found that other sadistic or masochistic materials in Johnson's possession were sufficiently relevant to the offense of conviction. Johnson challenges both determinations in this appeal.

We find no error in the district court's conclusion that the video portrayed sadistic conduct under § 2G2.1(b)(4). Because we affirm the application of the S&M enhancement on this basis, we need not reach Johnson's remaining challenge to the enhancement.

B

We begin with the meaning of "sadistic" conduct. Because the Guidelines do not define the term "sadistic," courts generally "look to the common meaning[] of th[is] term[] to determine [its] application." *United States v. Corp*, 668 F.3d 379, 388 (6th Cir. 2012) (quoting *United States v. Groenendal*, 557 F.3d 419, 425 (6th Cir. 2009)). Courts have defined sadistic conduct as acts "involv[ing] 'infliction of pain upon a love object as a means of obtaining sexual release,' 'delight in physical or mental cruelty,' or 'excessive

---

§ 2G2.2(b)(3) and § 2G2.1(b)(3), respectively, but the language in each Guideline remained the same as it was before the 2004 amendment. *See United States v. Corp*, 668 F.3d 379, 389 n.2 (6th Cir. 2012). Given the identical nature of these Guidelines, courts routinely apply an interpretation of one to any of the other three. *Id.* We do the same here.

7

cruelty.'" *United States v. Shouse*, 755 F.3d 1104, 1106 (9th Cir. 2014) (quoting Webster's Third New Int'l Dictionary 1997-98 (1993)). Sadistic conduct is "not limited to activity involving a rope, belt, whip, chains, or other instruments," *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001), nor does it "necessarily require violent conduct," *United States v. Turchen*, 187 F.3d 735, 740 (7th Cir. 1999). Rather, images portraying "purposefully degrading and humiliating" sexual gratification that "causes mental suffering or psychological or emotional injury in the victim" may also qualify as sadistic under the Guidelines. *Id*. In this appeal, Johnson acknowledges his video is "disturbing" and "worthy of severe punishment." Appellant's Br. 20. However, he argues several considerations undermine the district court's conclusion that the video depicted sadistic conduct.

We disagree. Where pornographic images portray the sexual penetration of prepubescent children, courts consistently find the images "inherently sadistic" because they depict sexual acts that are "likely to cause pain in one so young." *See Corp*, 668 F.3d at 390 (quoting *Groenendal*, 557 F.3d at 425); *see also Burgess*, 684 F.3d at 454; *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007); *United States v. Johnson*, 450 F.3d 831, 834 (8th Cir. 2006); *United States v. Hall*, 312 F.3d 1250, 1263 (11th Cir. 2002); *United States v. Lyckman*, 235 F.3d 234, 239 n.22 (5th Cir. 2000). Here, penetration of the prepubescent victim occurred frequently throughout the video. As the district court noted, the video was "awash with" oral penetration, "digital touching beyond the [victim's] labia occur[ed] repeatedly," Johnson "penetrated the victim with a pink vibrator at least through the labia," and Johnson "engag[ed] in an effective

8

simulation of sexual intercourse with [the victim]." J.A. 166, 167, 250, 251. The district court properly relied on these varied portrayals of penetration, together with Johnson's own words describing his sexual encounters with the victim, to apply the four-level enhancement now challenged by Johnson.

Johnson contends that the depicted use of the vibrator and the instances of simulated intercourse are insufficient to warrant the four-level enhancement. He posits that a vibrator is "designed to cause pleasure, not pain," and that its use on the victim's outer genitalia distinguishes his case from others involving anal or vaginal penetration of a child. Appellant's Br. 21. He also asserts that his video "did not depict actual penetration of the victim's vagina by [his] penis," *id.* at 20-21, and he challenges the district court's finding that vaginal penetration "likely . . . did occur" based on movements that "so simulate[d] intercourse," J.A. 166, 168. These arguments are unavailing.

To the extent Johnson argues that the use of a vibrator cannot constitute sadistic contact because it is designed to cause pleasure, we decline to so hold. It defies common sense to characterize a vibrator as an instrument of pleasure when used on a prepubescent victim. More broadly, however, Johnson unpersuasively attempts to isolate our review to each discrete instance of actual or simulated penetration. The relevant question before this Court is whether the video "*as a whole*" depicts or involves sadistic conduct. *See United States v. Coates*, 462 F. App'x 199, 205 (3d Cir. 2012) (emphasis added). Sadistic content is not limited, as Johnson argues, to images depicting "actual penetration of the victim's vagina" by a "non-sexual object[]" or adult penis, Appellant's Br. 20-21.

9

*See, e.g.*, *United States v. Norton*, 557 F. App'x 615, 617 (8th Cir. 2014) (affirming a four-level S&M enhancement where images "depict[ed] [the defendant's] bare penis against [rather than penetrating] the victim's vagina" as well as "digital penetration and manipulation of the victim's genitals," and an email by the defendant indicated he had attempted to penetrate the victim); *Coates*, 462 F. App'x at 205 (affirming a four-level S&M enhancement where an image "depicted [the defendant] placing his erect penis in his [prepubescent] daughter's mouth."); *United States v. Canada*, 110 F.3d 260, 264 (5th Cir. 1997) (noting that photos portraying the penetration of minors "through the use of sexual devices" were sadistic under the Sentencing Guidelines). Given the many depictions of sexual penetration of the prepubescent victim that, as a whole, support a finding of sadism in this case, we need not engage in individualized analyses of the purported degrees of penetration rendered on video.[3]

Johnson also argues that the video did not depict sadistic conduct because there was "no obvious indication" of the victim's pain. Appellant's Br. 8. After reviewing the video, the district court noted that the victim "purse[d] her lips in a manner that suggests pain" when she and Johnson were engaged in what appeared to be vaginal intercourse. J.A. 168. Emphasizing that the victim never cried out in pain, Johnson challenges the court's interpretation of and reliance on the victim's facial expression.

Whether a particular image portrays sadistic conduct under the Sentencing Guidelines is, indeed, "an objective determination." *Corp*, 668 F.3d at 389. However, it

---

[3] Though unpublished and non-precedential, we find the reasoning of the cases cited from our sister circuits persuasive.

10

is undisputed that the victim was a prepubescent minor when the video was filmed. *See United States v. Cover*, 800 F.3d 275, 281 (6th Cir. 2015) (noting that under the Sentencing Guidelines, a "minor who has not attained the age of 12" constitutes a "prepubescent minor." (quoting U.S.S.G. § 2G2.2(b)(2))). As we noted above, numerous courts are in accord that images portraying "the sexual penetration of prepubescent children are *inherently* sadistic" because, "from the standpoint of an objective viewer, such [images] unquestionably involve 'the depiction of a sexual act that is likely to cause pain in one so young.'" *Corp*, 668 F.3d at 390 (emphasis added) (citation omitted). Given the full context of the filmed sexual conduct – including the victim's age as well as the varied and lengthy instances of penetration depicted "within the four corners of the [video]," *id.* at 389 – the district court did not err in interpreting the victim's grimace as a reflection of pain. We have no difficulty coming to the same conclusion as the district court: the filmed sexual acts were quite likely to cause pain, both mental and physical, to the prepubescent victim.

Accordingly, because we discern no clear error in the district court's finding and conclusion that Johnson's video depicted sadistic conduct, we do not disturb the district court's application of the S&M enhancement under § 2G2.1(b)(4).

### III

We next turn to the restitution amount ordered in this case. We review a district court's restitution order for abuse of discretion, *United States v. Leftwich*, 628 F.3d 665, 667 (4th Cir. 2010), and the court's determination of the restitution amount is reviewed for clear error, *United States v. Dawkins*, 202 F.3d 711, 714 (4th Cir. 2000).

11

Restitution is mandatory for the offense at issue here, *see* 18 U.S.C. § 2259(a), (b)(4)(A), and the defendant must be ordered "to pay the victim . . . the full amount of the victim's losses as determined by the court," *id*. §§ 2259(b)(1). The "full amount of the victim's losses" include, in relevant part, costs incurred by the victim for "medical services relating to physical, psychiatric, or psychological care," "rehabilitation," and "any other losses suffered by the victim as a proximate result of the offense." *Id*. § 2259(b)(3). Courts have "recognized that [§ 2259] is 'phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse,'" *United States v. Doe*, 488 F.3d 1154, 1159 (9th Cir. 2007) (citation omitted), and future counseling expenses may be included in the restitution award, *see, e.g.*, *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001). The government bears "[t]he burden of demonstrating the amount of the loss sustained by the victim" by a preponderance of the evidence. 18 U.S.C. § 3664(e).

Johnson acknowledges that the victim qualifies for restitution, including costs incurred for psychiatric or psychological care. However, Johnson contends the district court had an insufficient factual basis when it awarded the victim $78,000[4] for future therapy costs. He takes issue with the district court's reliance on the guardian's unsworn letter, in which the guardian related she had spoken with a number of professionals regarding the victim's need for therapy and had located a therapist who has the availability, proper expertise, and willingness to take the victim on as a client. At a rate

---

[4] Johnson did not object to the $7,800 restitution award to the Virginia Criminal Injuries Compensation Fund.

12

of $150 per session, one session per week until the victim attained the age of 18, the total projected cost for these sessions was $78,000. Johnson observes that no evidentiary hearing was held, the identified therapist had not directly evaluated the victim in this case, and the victim had yet to receive or attend any therapy. Johnson urges us to vacate the restitution order and remand for a more thorough investigation.

As the government correctly notes, "'[a]bsolute precision' is not required" when calculating the proper amount of restitution. *United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012) (citation omitted). Rather, the government must establish the amount of the victim's loss with "reasonable certainty." *United States v. Laney*, 189 F.3d 954, 967 n.14 (9th Cir. 1999). Here, the guardian relayed observations made by other professionals who had not interviewed or treated the victim. However, requiring the minor victim to submit to interviews or treatment before receiving restitution would contravene statutory language that "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). Moreover, when determining the appropriate amount of restitution, courts have determined they "may consider hearsay evidence that bears 'minimal indicia of reliability' so long as the defendant is given an opportunity to refute that evidence." *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997) (quoting *United States v. Hairston*, 888 F.2d 1349, 1353 (11th Cir. 1989)). That standard is satisfied here. We note that the court-appointed guardian in this case was well-situated to convey the relevant facts for consultation with professional therapists, who unanimously concluded that the victim should be provided immediate and continuous therapy. Given Johnson's opportunity to file an opposition brief in the

13

underlying proceedings and the "minimal indicia of reliability" that is duly satisfied by the guardian's letter, the district court did not clearly err in considering the guardian's hearsay statements.

To the extent Johnson challenges the district court's alleged failure to hold a restitution hearing, we do not find any error. Critically, Johnson did not request a restitution hearing during the underlying proceedings and, *on the parties' request*, the question of restitution rested on the parties' briefing. As for the estimated frequency and duration of therapy, the guardian noted that establishing a consistent relationship with a therapist is crucial for successful therapy and that the victim's need for counseling will remain and may even increase as she approaches puberty. It is notable that the guardian identified a specific therapist close to where the victim lives – who works at an institute with a long history of treating victims of sexual abuse and trauma – who has the availability, proper expertise, and willingness to take the victim on as a client. Given the harm suffered by the victim, it was reasonable to base the restitution calculation on weekly sessions with this identified therapist for the next ten years, until the child reaches the age of eighteen (and without any consideration for the likelihood that such costs will increase by then).

In sum, the observations and calculations in the guardian's letter bear "sufficient indicia of reliability to support [the] probable accuracy [of the restitution award]." *See United States v. Singletary*, 649 F.3d 1212, 1217 n.21 (11th Cir. 2011) (citation omitted). We therefore affirm the $78,000 restitution amount awarded to the victim.

IV

For the reasons set forth above, the judgment is

*AFFIRMED*.