# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40196

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff–Appellee,

v.

CALVIN NESMITH,

> Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, JOLLY, and PRADO, Circuit Judges.*

EDWARD C. PRADO, Circuit Judge:

Defendant–Appellant Calvin Nesmith pleaded guilty to the sexual exploitation of a minor after investigators found an explicit image of Nesmith and the fourteen-year-old daughter of his girlfriend. In calculating Nesmith's Guidelines sentencing range, the district court applied a four-level enhancement because the image purportedly depicted sadistic conduct. Nesmith appeals the district court's application of the sadism enhancement. We VACATE and REMAND for resentencing.

---

* E. Grady Jolly, Circuit Judge, concurs in the judgment only.

No. 16-40196

## I. BACKGROUND

In June 2015, Department of Homeland Security ("DHS") agents began investigating Calvin Nesmith after he responded to an undercover agent's online ad posing as the mother of two young girls. Nesmith arranged to meet with the agent and one of her underage daughters for a "three-way sexual encounter," and was arrested at the scene of the meeting. DHS agents searched his home the following day. During the search, agents discovered a thumb drive containing pictures of Nesmith and Jane Doe, the then fourteen-year-old daughter of a woman whom Nesmith had been dating and living with for over five years. One image on the thumb drive, the image at issue, depicted Nesmith "standing by [Doe's] bed with his erect penis on the minor's lips."

In November 2015, Nesmith pleaded guilty to the sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e). The presentence report ("PSR") recommended a four-level enhancement under U.S.S.G. § 2G2.1(b)(4), which applies "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." Nesmith objected to application of the sadism enhancement, arguing that the image in question did not depict "purposeful, violent, [or] aggressive conduct." In its response, the Government conceded that the image did not depict physical violence but argued that the image had inflicted emotional pain on the victim. Apparently, "[d]uring the course of the government's investigation, the victim learned of the existence of the image and exactly what it depicts." After learning about the image, the victim felt "humiliated and degraded," which, according to the Government, sufficed as the sort of infliction of emotional pain that justifies application of the sadism enhancement.

During Nesmith's sentencing hearing, Doe testified that she had been asleep when the picture was taken and "had no idea the picture [existed] until court." After being told about the content of the picture, Doe said she felt

embarrassed, humiliated, and worried because she didn't "know who's seen it or if it will ever get out and how it will affect [her] later." Based on Doe's testimony, the Government reurged application of the enhancement. Nesmith objected, arguing that the image did not portray sadistic or masochistic conduct because it did not depict anyone inflicting or receiving pain. The district court overruled Nesmith's objection, and sentenced him to 360 months' imprisonment. This appeal followed.

## II. DISCUSSION

### A.     Standard of Review

The parties first dispute the applicable standard of review. The Government contends that Nesmith's argument on appeal differs from his objection below and argues that plain error review should therefore apply. Nesmith counters that the objection he made before the district court contained the gist of his argument on appeal; he therefore urges us to apply de novo review.

"Generally, this Court reviews the district court's application of the Sentencing Guidelines *de novo*. . . ." *United States v. Garcia-Perez*, 779 F.3d 278, 281 (5th Cir. 2015) (quoting *United States v. Medina-Anicacio,* 325 F.3d 638, 643 (5th Cir. 2003)). However, "[w]hen a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only." *Id.* (quoting *Medina-Anicacio*, 325 F.3d at 281). But the objection and argument on appeal need not be identical; the objection need only "'g[i]ve the district court the opportunity to address' the gravamen of the argument presented on appeal." *Id.* at 281–82 (quoting *United States v. Ocana*, 204 F.3d 585, 588–89 (5th Cir. 2000)). In other words, the "objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *Id.* (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009)); *see also*

No. 16-40196

*United States v. Hernandez-Montes*, 831 F.3d 284, 290 (5th Cir. 2015) ("Key is whether the objection is specific enough to allow the [district] court to take evidence and receive argument on the issue.").

Here, Nesmith's objection to the sadism enhancement before the district court preserved the argument he makes on appeal. Below, Nesmith essentially argued that § 2G2.1(b)(4) was inapplicable because the image at issue does not portray sadism—i.e., the conduct depicted did not inflict pain on the victim. The core of Nesmith's argument on appeal remains the same. On appeal, Nesmith contends that the sadism enhancement should apply only where an image portrays conduct that contemporaneously inflicts either physical or emotional pain on the victim. Because Doe was asleep in the image at issue and was thus unaware that the image was taken, Nesmith reasons that his conduct did not inflict contemporaneous pain on Doe. Although Nesmith's argument is somewhat refined on appeal, the crux of his objection is the same: the image does not depict the infliction of pain. Given that the "essence [of Nesmith's argument] was fairly presented to the district court," we apply de novo review. *See Garcia-Perez*, 779 F.3d at 282.

**B.     Analysis**

We begin our consideration of the merits by determining the proper standard by which to judge whether the image portrays sadistic conduct within the meaning of § 2G2.1(b)(4). The parties disagree on two primary issues: (1) whether the test for application of the sadism enhancement is subjective or objective; and (2) whether an image must depict conduct that would contemporaneously inflict physical or emotional pain on a victim to qualify as sadistic.

Our starting point for interpretation is the plain text of the Guidelines. *United States v. Lyckman*, 235 F.3d 234, 238 (5th Cir. 2000). The plain text of § 2G2.1(b)(4) weighs in favor of an objective analysis. The Guidelines provide

No. 16-40196

that the sadism enhancement applies "[i]f the offense involved material that *portrays* sadistic conduct or other *depictions* of violence." U.S.S.G. § 2G2.1(b)(4) (emphases added). Thus, according to § 2G2.1(b)(4)'s plain text, the inquiry should focus on an observer's view of the image—what is portrayed and depicted—rather than the viewpoint of either the defendant or the victim.[1] In other words, the text emphasizes what objectively appears to be happening, not what actually occurred.

In line with the text, the six other circuits to consider this issue have held that the determination of whether the sadism enhancement applies is an objective inquiry. *See United States v. Johnson*, No. 16-4005, 2017 WL 775856, at *4 (4th Cir. Feb. 28, 2017) (per curiam) ("Whether a particular image portrays sadistic conduct under the Sentencing Guidelines is, indeed, 'an objective determination.'" (quoting *United States v. Corp*, 668 F.3d 379, 389 (6th Cir. 2012))); *United States v. Johnson*, 784 F.3d 1070, 1074 (7th Cir. 2015) ("[T]he proper question is whether the image itself would be objectively considered sadistic."); *United States v. Corp*, 668 F.3d 379, 389 (6th Cir. 2012) ("[W]hether a particular image can be classified as portraying sadistic or masochistic conduct under § 2G2.1(b)(4) is an objective determination."); *United States v. Maurer*, 639 F.3d 72, 80 (3d Cir. 2011) (holding that "this factual inquiry is an objective one"); *United States v. Freeman*, 578 F.3d 142, 146 (2d Cir. 2009) ("[T]he determination of whether an image is sadistic . . . is an objective one."); *United States v. Raplinger*, 555 F.3d 687, 694 (8th Cir.

---

[1] Nesmith counters that an objective inquiry cannot be proper given this Court's statement in *United States v. Cloud*, that the "effect on the victim has often been the inquiry in our case law." 630 F. App'x 236, 238 (5th Cir. 2015) (per curiam). But even if *Cloud*, an unpublished opinion, were binding, it did not determine whether the sadism-enhancement inquiry is subjective or objective. In making the statement relied upon by Nesmith, the Court was simply refuting the proposition that it was the defendant's intent, not the effect on the victim, that mattered. *Id.*

2009) ("The enhancement . . . applies to material *depicting* sadistic, masochistic, or violent conduct even if those pictured were not truly engaging in painful activities.").[2] Because Nesmith has not provided a compelling reason to create a circuit split, we likewise hold that an objective standard governs the assessment of whether an image portrays sadistic conduct under § 2G2.1(b)(4).

Nesmith also argues that the sadism enhancement should only apply if an image depicts conduct that an objective observer would view as causing a victim emotional or physical pain contemporaneous to creation of the image. The Government, on the other hand, suggests that an image can portray sadistic conduct even if, as here, the victim is unaware of the conduct when the picture was taken but would likely experience mental or emotional suffering if he or she later learned of it. The Government does not argue that the conduct caused the victim any pain contemporaneous with the image's creation.

As above, we begin with the text of the Guidelines. In *Lyckman*, this Court defined sadism as "the infliction of pain upon a love object as a means of obtaining sexual release." 235 F.3d at 238 n.19 (quoting *Sadism*, *Webster's Third New International Dictionary* (1986)). This interpretation suggests a causal relationship—the victim's experience of contemporaneous physical or emotional pain is what prompts the sadist's sexual release. In other words, a sadist would only experience sexual gratification *while* inflicting pain or humiliation on another; a sadist would not obtain sexual release from the

---

[2] Although some of these cases address § 2G2.2(b)(4) rather than § 2G2.1(b)(4), the language of these two provisions is identical. *Cf. United States v. Shouse*, 755 F.3d 1104, 1106 (9th Cir. 2014) (considering issue involving application of § 2G2.1(b)(4) and finding "no reason to deviate from [Ninth Circuit] precedent with respect to identical language in § 2G2.2(b)(4) . . . both of which stem from the same [Guidelines] chapter on 'sexual exploitation of a minor'").

foreseeable, but uncertain, possibility that the victim will at some point in the future feel emotional pain.

This Court has never faced application of the sadism enhancement in a scenario like this one—where the minor victim is completely unconscious and unaware of the sexual exploitation occurring at his or her expense. But in all the cases where we have found the sadism enhancement appropriate, the infliction of emotional or physical pain that was the basis for the enhancement has been contemporaneous with the creation of the image. *See, e.g.*, *United States v. Cloud*, 630 F. App'x 236, 237–39 (5th Cir. 2015) (per curiam); *United States v. Comeaux*, 445 F. App'x 743, 745–46 (5th Cir. 2011) (per curiam); *United States v. Hewitt*, 326 F. App'x 756, 759 (5th Cir. 2009) (per curiam); *Lyckman*, 235 F.3d at 238–40.

Even aside from the guidance provided by our case law, it would be unwise to expand the sadism enhancement to apply in all situations where it is reasonably foreseeable that the conduct depicted in the image will later manifest itself in pain. As an initial matter, without a contemporaneousness requirement, § 2G2.1(b)(4) would apply in every child pornography case regardless of the content of the images in question. After all, it is foreseeable that any child who discovers that he or she was depicted in pornography would feel humiliated and debased. Like the plaintiff here, all child victims would likely find it "nerve-wracking" not knowing who had seen the images or if they would become public later and not knowing what effect that would have on their lives. Moreover, without requiring the pain inflicted on the victim to be contemporaneous with creation of the image in question, the sadism enhancement could apply even where a victim never becomes aware that he or she is the subject of child pornography. Any connection between the victim and the defendant would make it foreseeable that the victim would later learn of the conduct depicted in the images and consequently experience emotional

pain. In our view, it is inappropriate to apply an enhancement in such a broad manner that it essentially becomes part of the base offense level.

Under the Government's reasoning, even if § 2G2.1(b)(4) were only to apply where the victim actually became aware of the sexual exploitation depicted in the image, application of the enhancement would then turn on the conduct of individuals other than the defendant. If, as was the case here, the Government tells the victim that the image exists and describes its content, that victim will most likely testify to feeling humiliated and debased, and the sadism enhancement would apply. On the other hand, where the victim remains totally unaware of the image, a court could find that such humiliation and debasement are unlikely to happen in the future. Again, this is true regardless of the actual content of the image. In either situation, application of the enhancement would inappropriately be predicated on the conduct of individuals other than the defendant.

Given the plain text of the Guidelines, our case law, and the strong policy reasons in favor of such an approach, we conclude that a contemporaneity requirement is appropriate. Accordingly, we hold that an image portrays sadistic conduct where it depicts conduct that an objective observer would perceive as causing the victim in the image physical or emotional pain contemporaneously with the image's creation. Because the victim in this case was asleep when the image was taken, no objective observer would conclude that the image portrayed sadistic conduct—namely, the defendant obtaining sexual release through the infliction of physical or emotional pain on another.

## III. CONCLUSION

For the foregoing reasons, we VACATE and REMAND for resentencing.

8