# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 20, 2021

Lyle W. Cayce
Clerk

No. 20-10008

United States of America,

*Plaintiff—Appellee*,

*versus*

Rafael Bravo,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-83

Before Elrod, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:*

We WITHDRAW the prior opinion filed March 25, 2021 and substitute the following.

During their search of the residence of Rigo Sandoval, a known drug dealer, officers saw Rafael Bravo throw a gun over the fence in Sandoval's backyard. Officers also discovered a stash of firearms and 2,978 grams of

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

methamphetamine in Sandoval's home. Bravo was charged with, and pleaded guilty to, one count of possession of a firearm by a convicted felon. In determining the sentence recommendation for the presentence investigation report, the probation officer concluded that Bravo was accountable for the 2,978 grams of methamphetamine because, based upon the evidence, he and Sandoval were co-conspirators with respect to the drugs. The probation officer then applied § 2K2.1(c)(1)(A)—the firearm offense guideline's cross reference to the drug offense guideline—to calculate Bravo's base offense level. The district court adopted the presentence investigation report's recommendation and sentenced Bravo to 120 months' imprisonment and 3 years' supervised release. Bravo challenges his sentence, arguing that the district court erred by implicitly finding that Bravo and Sandoval had jointly undertaken a criminal activity with respect to the 2,978 grams of methamphetamine found at Sandoval's home. We affirm.

I

In December 2018, law enforcement received information that Rigo Sandoval was selling methamphetamine from his home. On January 31, 2019, officers executed a search of Sandoval's home where they encountered eight individuals, including Sandoval and his cousin, Rafael Bravo. When officers entered Sandoval's backyard, Bravo threw a gun over Sandoval's fence into an adjacent backyard. Inside the residence, officers found several additional firearms, ammunition, $9,236 cash, a digital scale, and 2,978 grams of methamphetamine.

Sandoval and Bravo were arrested on federal charges. After his arrest, Sandoval admitted that he lived at the residence, the methamphetamine found in the residence belonged to him, and he was involved in methamphetamine distribution. Officers identified Bravo as Sandoval's cousin and one of Sandoval's "methamphetamine customers" because

No. 20-10008

Sandoval admitted that, in the months prior to their arrest, he had sold 56.7 grams of methamphetamine to Bravo, who then redistributed the drugs to his own customers. Based on Sandoval's admissions, the probation officer concluded that Bravo and Sandoval were co-conspirators with respect to the 2,978 grams of methamphetamine found inside Sandoval's home. The probation officer thus held Bravo accountable for the 2,978 grams of methamphetamine found inside Sandoval's home as well as the 56.7 grams of methamphetamine that Bravo had previously purchased from Sandoval for a total of 3,034.7 grams of methamphetamine.

Because this incident involved firearms and drugs, the probation officer worked through several guidelines to calculate Bravo's sentence, which will be discussed in detail below. In calculating Bravo's base offense level, the probation officer determined that § 2K2.1 was the relevant guideline because Bravo was convicted of felony possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The probation officer then applied § 2K2.1's cross reference to § 2X1.1 because Bravo possessed the firearm in connection with the commission of another offense; namely, possession of a controlled substance. U.S.S.G. § 2K2.1(c)(1)(A). Since the base offense level under § 2X1.1 is the "base offense level from the guideline for the substantive offense, plus any adjustments from that guideline," the probation officer applied § 2D1.1, the guideline for possession of controlled substance violations. *Id.* § 2X1.1(a).[1] Based on the 3,034.7 grams of methamphetamine for which Bravo was held accountable, the probation officer calculated Bravo's base offense level as 36. *Id.* § 2D1.1(c)(2). The probation officer then added 2 levels because Bravo possessed a dangerous

---

[1] The probation officer determined that possession of a controlled substance was the substantive offense because Sandoval was charged with possession of a controlled substance, in violation of 21 U.S.C. § 841(a).

weapon. *Id.* § 2D1.1(b)(1). Finally, the probation officer subtracted 2 levels because Bravo had demonstrated acceptance of responsibility. *Id.* § 3E1.1(a). Thus, the probation officer set Bravo's total offense level at 36.

With a total offense level of 36 and Bravo's criminal history category of IV, the Guidelines range was 262–327 months. However, 18 U.S.C. §§ 922(g)(1) and 924(a)(2) set a maximum sentence of 10 years' imprisonment, so the probation officer recommended a sentence of 120 months' imprisonment and 1 year to 3 years of supervised release. *Id.* § 5G1.1(a).

Bravo filed written objections to the PSR. He objected to the PSR's description of Sandoval's admissions and conduct "to the extent this information [about Sandoval] is used as a basis for the 'drug cross reference' guideline calculations." He also objected to the use of the listed drug quantities for Guidelines calculation purposes, denying that he was a methamphetamine customer of Sandoval and that he distributed methamphetamine to his own customer base. Finally, Bravo argued that his base offense level should have been 20 and his total offense level 18, which, when computed with his criminal history category of IV, would have yielded a Guidelines range of 41–51 months. *Id.* § 2K2.1(a)(4)(A).

The Government argued that Bravo's objections should be overruled because Bravo offered no evidence to rebut the evidence in the PSR. The Government asserted that Sandoval's cell phone messages showing that Sandoval was a methamphetamine dealer, Bravo's knowledge that Sandoval distributed drugs from his home, Bravo's arrest at Sandoval's home "where a substantial amount of methamphetamine and firearms were recovered," Bravo's relationship to Sandoval as his cousin, and Bravo's criminal history, including two prior convictions for drug-possession offenses, all corroborated the PSR's conclusion that Bravo and Sandoval were co-

conspirators with respect to the 2,978 grams of methamphetamine found at Sandoval's home.

The probation officer also responded to Bravo's objections in an addendum to the PSR. She stated that the information in the PSR had a "sufficient indicia of reliability" since it was based on the indictment, factual resume, investigative material from local police and federal agents, and interviews with a federal agent. The probation officer also noted that Bravo "did not provide information to rebut the information in the PSR," and she declined to make any changes to the PSR in response to Bravo's objections.

At sentencing, Bravo relied on his written objections and did not present the district court with any evidence to rebut the information in the PSR. The district court overruled Bravo's objections for the reasons stated in the Government's response and in the PSR's addendum and then adopted the facts and conclusions stated in the PSR.

The district court then sentenced Bravo to 120 months' imprisonment and 3 years' supervised release. Bravo objected that the sentence was not reasonable. The district court overruled that objection based upon "the facts and circumstances of this offense," including: (1) the circumstances of the search of Sandoval's home and Bravo's actions during that search; (2) "the amount of drugs and guns and cash" found at Sandoval's home; (3) Bravo's role in the offense; and (4) Bravo's prior criminal history of drug offenses, state weapons offenses, and violent crimes. In its Statement of Reasons, the district court also noted that, "[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553."

Bravo timely appealed his sentence, arguing that the district court erred in finding that Bravo and Sandoval were jointly undertaking a criminal

activity with respect to the 2,978 grams of methamphetamine found inside Sandoval's home.

## II

Bravo argues that we should review the district court's finding for clear error, while the Government argues that we should review for plain error because Bravo did not specifically object on this basis below. To determine the appropriate standard of review, we must first assess whether Bravo properly preserved the issue he raises on appeal. If he did, we review the district court's finding for clear error. *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012) (citing *United States v. Gharbi*, 510 F.3d 550, 554 (5th Cir. 2007)). But if he did not, we review only for plain error. *Id.*; FED. R. CRIM. P. 52(b).

To preserve an issue for appeal, a defendant must make an objection that is "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017) (internal quotation marks and citation omitted). Where a defendant provides a written objection, we similarly consider whether the "written objection was clear enough to provide the district court with opportunity to rule on it." *United States v. Gomez-Alvarez*, 781 F.3d 787, 791 (5th Cir. 2015) (internal quotation marks and citation omitted). But we do not require that a defendant's objection below and his argument on appeal be identical. *Nesmith*, 866 F.3d at 679. Instead, a defendant preserves an issue for appeal so long as the "crux of his objection is the same" as his argument on appeal. *Id.*

Bravo's written objections before the district court have the same fundamental core as the issue on appeal—both concern whether Bravo can be held accountable for the drugs at Sandoval's home based upon his joint criminal activity with Sandoval. Bravo objected to Sandoval's admissions and

conduct, as described in the PSR, "to the extent this information [wa]s used as a basis for the 'drug cross reference' guideline calculations, or in any manner in which [Bravo] [wa]s believed responsible or accountable for the material seized." Bravo also objected to the use of the listed drug quantities for Guidelines calculation purposes, denying that he was a methamphetamine customer of Sandoval and that he distributed methamphetamine to his own customer base. Bravo's objections thus put the district court on notice that he objected to being held accountable for the 2,978 grams of methamphetamine found inside Sandoval's home. And the district court had the opportunity to address the core of Bravo's argument since it explicitly adopted the Government's response to Bravo's objections and the PSR's addendum, both of which concluded that there was a conspiracy between Bravo and Sandoval based on the facts in the PSR.

Because Bravo preserved the issue he now raises on appeal, we review the district court's factual finding for clear error. *Gomez-Alvarez*, 781 F.3d at 791. "[I]f the district court's finding is plausible in light of the record as a whole," then there is no clear error. *Id.* (quotation marks and citation omitted).

## III

Before we turn to Bravo's challenge, we first detail the mechanics of the relevant Guidelines cross reference. The § 2K2.1(c)(1)(A) cross reference applies when a firearm facilitated "another offense" and the firearm was cited in the offense of conviction. U.S.S.G. § 2K2.1 cmt. 14(A). When "another offense" is a drug offense, the cross reference applies when the firearm is "found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *Id.* § 2K2.1 cmt. 14(B). The cross reference may apply even if the defendant was not charged with, or convicted of, the drug offense. *Id.* § 2K2.1 cmt. 14(C) (definition of "another offense").

Those circumstances are present here. Officers saw Bravo with a handgun in Sandoval's backyard, that firearm was in close proximity to the 2,978 grams of methamphetamine in Sandoval's home, and Bravo was convicted of felony firearm possession.

However, for the cross reference to apply, the district court must also consider the relationship between the offense of conviction and the drug offense. *Id.* § 2K2.1 cmt. 14(E). *See id.* § 1B1.3(a) (specifically noting its application to "cross references in Chapter Two"). If the "relevant conduct" for the drug offense includes "jointly undertaken criminal activity," the district court may hold the defendant accountable for another person's conduct only if that conduct was (1) "within the scope of the jointly undertaken criminal activity," (2) "in furtherance of that criminal activity," and (3) "reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(B). *See also id.* § 1B1.3 cmt. 3(A).

We now consider whether the record supports the application of the cross reference in this case. To hold Bravo accountable for the 2,978 grams of methamphetamine found in Sandoval's home, the district court had to find that Sandoval's possession of those drugs was within the scope of a joint criminal activity with Bravo, in furtherance of that activity, and reasonably foreseeable. And the district court only needed to find these facts by a preponderance of the evidence. *See, e.g.*, *United States v. Landreneau*, 967 F.3d 443, 451 (5th Cir. 2020).

Bravo argues that the Government failed to show that Sandoval's possession of the drugs was within the scope of a jointly undertaken criminal activity between Sandoval and Bravo.[2] Sandoval admitted that, in the months

---

[2] Bravo asserts that the Government "didn't even make the determination that Sandoval's stash was foreseeable to Bravo," but he does not sufficiently brief this issue.

No. 20-10008

before the January 31 search of his home, he had sold Bravo 56.7 grams of methamphetamine, which Bravo then redistributed. Bravo does not contest that he is accountable for those 56.7 grams. But he claims he should not be held accountable for the 2,987 grams found at Sandoval's home because the Government did not prove that Bravo had an agreement to possess those drugs with Sandoval. In so arguing, Bravo attempts to isolate his previous methamphetamine purchase from Sandoval from the circumstances surrounding the stash of methamphetamine at Sandoval's home.

Bravo's prior drugs purchase, standing on its own, does not necessarily show that the Sandoval's possession of the stash of drugs was within the scope of Bravo's and Sandoval's jointly undertaken criminal activity.[3] But the district court did not clearly err by viewing these two

And Bravo does not raise any arguments about the "in furtherance of" element of jointly undertaken criminal activity.

[3] The facts of this case fall between those of our precedent. In *Mitchell*, we vacated a sentence holding the defendant responsible for 20 kilograms of drugs when he had pleaded guilty to conspiring to distribute only 0.5 kilograms. *United States v. Mitchell*, 964 F.2d 454, 456, 461 (5th Cir. 1992). Similarly, in *Rivera*, we vacated a sentence that held the defendant responsible for 224.47 grams of heroin when he had pleaded guilty to possessing only 0.28 grams. *United States v. Rivera*, 898 F.2d 442, 443, 445–46 (5th Cir. 1990). And in *Roddy*, we vacated a sentence that held the defendant responsible for 1,000 grams of methamphetamine that she saw in a Ziploc bag in her supplier's home when she was there to purchase 1 ounce of methamphetamine. *United States v. Roddy*, 812 F. App'x 285, 285–86 (5th Cir. 2020). In contrast, in *United States v. Ponce*, 917 F.2d 841 (5th Cir. 1990), we affirmed a sentence holding the defendant accountable for his co-conspirators' drugs totaling 231.3 grams of cocaine despite his pleading guilty to possession of about 23 grams. *Id.* at 842, 846.

Here, the 2,978 grams found inside Sandoval's home is approximately 60 times greater than the 56.7 grams that Bravo purchased from Sandoval. If we were deciding this case in the first instance, we might find that Bravo should not be on the hook for the entire 2,978 grams. But in light of the entire record in this case and our deferential standard of review, we do not have a "definite and firm conviction that a mistake has been committed." *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019).

incidents together. Indeed, the previous purchase demonstrates that Bravo knew that Sandoval was a drug dealer. Plus, Bravo's purchase from Sandoval in the months prior to their arrest is probative as to why Bravo was present— and with a handgun—at Sandoval's drug-distribution home on the day of the January 31 search.

Moreover, under clear error, we must review the district court's finding in light of the *entire* record. That record shows that: (1) Bravo was at Sandoval's residence on the day of the search with a handgun; (2) Bravo threw that handgun over the fence when officers arrived; (3) Bravo knew that Sandoval sold drugs from his home because Bravo had previously purchased, and then redistributed, methamphetamine from Sandoval; and (4) Bravo had two prior drug possession convictions. In light of all that evidence, the district court did not commit clear error in finding that Sandoval's possession of 2,987 grams of methamphetamine was within the scope of jointly undertaken criminal activity with Bravo.

Bravo argues that these circumstantial facts do not show an agreement between Sandoval and him to jointly undertake criminal acts with respect to the stash of drugs. Bravo also argues that his "few prior buys" from Sandoval fail to show that the stash of drugs at Sandoval's home was within the scope of an agreement with Sandoval; instead, he claims that his case is analogous to an example in the Sentencing Guidelines. *See* U.S.S.G. § 1B1.3 cmt. 4(C)(vii). Finally, he argues that his prior drug-possession convictions also fail to make this showing because the first was too remote and did not involve Sandoval and the second involved marijuana, not methamphetamine.

Bravo's arguments about isolated parts of the record overlook the entire record as a whole. The facts and circumstances of this case are distinguishable from the Sentencing Guidelines example on which Bravo relies—unlike the defendant in that example, officers found Bravo at

No. 20-10008

Sandoval's drug-distribution home, and Bravo had a handgun, which he tried to remove from Sandoval's home once the officers arrived. *See id.* § 1B1.3 cmt. 4(C)(vii). Because the district court was permitted to make "common-sense inferences" from this circumstantial evidence, the district court could plausibly find that the stash of drugs in Sandoval's home fell within the scope of Bravo and Sandoval's joint criminal undertaking. *United States v. Caldwell*, 448 F.3d 287, 292 (5th Cir. 2006).

Bravo further asserts that the PSR disregarded three facts: (1) he did not admit to possessing any of the methamphetamine found in Sandoval's house; (2) he did not have any drugs on his person during the officers' search of Sandoval's home; and (3) none of the other individuals at Sandoval's home connected Bravo to the stash of methamphetamine in Sandoval's house. The first fact is insignificant in light of the entire record, which permitted the district court to infer that Bravo and Sandoval had an agreement with respect to the drugs stash. The second fact is also insignificant, given that only one of the eight individuals at Sandoval's home had drugs on his person. And the third argument is baseless because the PSR merely lists the eight people found at the residence but makes no statement as to what those individuals—other than Sandoval—told investigators about Bravo.

Bravo next argues that the district court erred because it did not make an explicit finding of an agreement between Bravo and Sandoval with respect to the stash of drugs but instead adopted the PSR's calculation "based upon the assumption that Bravo was a co-conspirator of Sandoval regarding the methamphetamine found in Sandoval's house." As the Government notes, Bravo cites no case that requires a district court to make an explicit finding of conspiracy for the § 2K2.1(c)(1)(A) cross reference to apply. Bravo's argument also fails because the district court did implicitly find that Sandoval and Bravo were part of a drug conspiracy. In particular, the district court

11

No. 20-10008

overruled Bravo's written objections "for the reasons stated in the Government's Response and in the [PSR] Addendum," and both of those documents concluded that Sandoval and Bravo were co-conspirators.

Bravo also argues that the district court erred by relying on the PSR's "assumptions" to determine that he was responsible for the stash of methamphetamine. The district court did not clearly err in relying on the information contained in the PSR. Factual statements in a PSR are "presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate, or unreliable." *United States v. Sanchez*, 850 F.3d 767, 769 (5th Cir. 2017) (internal quotation marks and citation omitted). The probation officer, the Government, and the district court all considered the information in the PSR to be reliable because this information was obtained through a review of investigative material and interviews with a federal agent. Bravo's written objections and his counsel's arguments at sentencing failed to offer any evidence to rebut the reliability of the information in the PSR. Thus, Bravo failed to meet his burden of rebutting the PSR, and the district court was permitted to adopt this information without further inquiry. *See Torres-Magana*, 938 F.3d at 217 (noting that the defendant bears the burden of demonstrating that the PSR's information is materially untrue and that the district court should not consider a defendant's "unsworn objections and argumentation" when making factual findings).

IV

Because the district court did not clearly err in finding that Bravo and Sandoval were jointly undertaking a criminal activity with respect to the 2,978 grams of methamphetamine found at Sandoval's home, we AFFIRM.