# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2337
_____

United States of America,

*Plaintiff - Appellee*,

v.

Jeffrey A. Anderson,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: November 22, 2013
Filed: July 17, 2014
_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Jeffrey Anderson entered a conditional guilty plea to one count of distributing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2256(8). Anderson appeals the district court's[1] denial of his motion to dismiss that count of the

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska, adopting the Findings, Recommendation and Order of the Honorable

indictment, arguing that the federal child pornography laws are unconstitutionally overbroad as applied to him. We affirm the district court's denial of the motion to dismiss.

I.

In June 2012, the Nebraska State Patrol received a report from the mother of an eleven-year-old girl identified in the record as "M.A." that the girl had received unsolicited, sexually explicit messages and images on Facebook from an account registered under the name Bob Shepherd. Subsequent investigation revealed that "Bob Shepherd" was actually Anderson. Anderson is M.A.'s half-brother.

With the permission of M.A.'s mother, an officer assumed control over M.A.'s Facebook account and received an image from Anderson. The image originally had depicted an adult male and adult female engaged in sexual intercourse, but Anderson digitally superimposed M.A.'s face over the face of the female. Anderson transmitted the image to M.A.'s account with a caption that said in substance: "This is what we will do." During an interview with law enforcement officers, Anderson admitted to creating the image and sending it to M.A.'s Facebook account. Digitally altered depictions of this sort are commonly referred to as "morphed images."

In August 2012, a grand jury charged Anderson in a four-count indictment with distribution of child pornography, distribution of child pornography to a minor, production of child pornography, and enticement of a minor to engage in unlawful sexual activity. Federal law, in relevant part, defines child pornography to include any "visual depiction [that] has been created, adapted, or *modified to appear* that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C)

Cheryl R. Zwart, United States Magistrate Judge for the District of Nebraska.

(emphasis added). 18 U.S.C. § 2252A(a)(2)(A) makes it a crime knowingly to distribute child pornography as defined in § 2256(8)(C).

Anderson moved to dismiss all four counts of the indictment. He did not dispute that the definition of child pornography in § 2256(8)(C) encompassed his morphed image as one that was "modified to appear that an identifiable minor is engaging in sexually explicit conduct." He sought dismissal on the ground that §§ 2252A(a)(2)(A) and 2256(8)(C) are unconstitutionally overbroad under the First Amendment as applied to the morphed image that he sent. The district court denied Anderson's motion, ruling that the morphed image was child pornography that was not protected speech under the First Amendment.

Anderson entered a conditional guilty plea to distribution of child pornography as charged in Count I of the indictment, reserving the right to appeal the district court's denial of his motion to dismiss. The court sentenced him to 120 months' imprisonment. The plea agreement and judgment provide that the remaining counts of the indictment will be dismissed if the government prevails in this appeal. Anderson now appeals the order denying his motion to dismiss Count I, and he properly invokes our jurisdiction under 28 U.S.C. § 1291. *See United States v. Abrams*, 137 F.3d 704, 707 (2d Cir. 1998) (per curiam). We review his First Amendment challenge *de novo*. *See United States v. Petrovic*, 701 F.3d 849, 854 (8th Cir. 2012).

II.

A.

The First Amendment's protection of freedom of expression does not extend to "certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem."

-3-

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). In *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court recognized child pornography as one such "category of material . . . not entitled to First Amendment protection." *Id.* at 765. The government argues that the morphed image that Anderson created and sent to M.A. falls within this category of unprotected speech.

The government's position is difficult to square with the Supreme Court's recent explanation why child pornography is categorically unprotected under the First Amendment. In *United States v. Stevens*, 559 U.S. 460 (2010), the Court clarified that child pornography was categorically unprotected in *Ferber* because it involved visual depictions that were produced through sexual abuse of one or more children. *See id.* at 471. Rejecting the government's invitation to recognize depictions of animal cruelty as a new category of unprotected speech, the Court explained that First Amendment protection does not depend on "a simple cost-benefit analysis," *id.*, but rather extends to all speech outside the "historic and traditional categories long familiar to the bar." *Id.* at 468 (internal quotation omitted).

The Court noted that some decisions, such as *Ferber* with respect to child pornography, had "*described* historically unprotected categories of speech as being 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Stevens*, 559 U.S. at 470 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992)). But the decision in *Ferber*, the Court explained, "did not rest on this 'balance of competing interests' alone." *Id.* at 471 (quoting *Ferber*, 458 U.S. at 764). Rather, *Ferber*'s analysis was "grounded . . . in a previously recognized, long-established category of unprotected speech": speech integral to criminal conduct, namely the sexual abuse of minors inherent in the production of child pornography. *Id.* at 471; *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (rejecting First Amendment protection for "speech or writing used as an integral part of conduct in violation of a valid criminal statute").

-4-

The government contends that this case is indistinguishable from *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005), where this court held that a morphed image of a minor's head superimposed onto another minor's nude body "involve[d] the type of harm which can constitutionally be prosecuted under . . . *Ferber*." *Id.* at 632. The underlying image in *Bach*, however, "depict[ed] a young nude boy . . . sitting in a tree in a lascivious pose with a full erection." *Id.* The morphed image was produced when "a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appear[ed] to be a picture of AC engaging in sexually explicit conduct with a knowing grin." *Id.*

Distinguishing the image from the virtual child pornography held to be protected speech in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), we reasoned that the morphed image in *Bach* "implicate[d] the interests of a real child *and . . . record[ed] a crime*" because of the sexually explicit manner in which the originally photographed minor was posed. 400 F.3d at 632 (emphasis added). We also explained that "[a]lthough there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity." *Id.* AC was "thus victimized every time the picture is displayed." *Id.* At the same time, however, *Bach* said that "there may well be instances in which the application of § 2256(8)(C) violates the First Amendment," *id.*, thus suggesting that the court did not view all speech covered by the statute as categorically unprotected.

The government argues that because the morphed image in this case creates a lasting record of M.A., an identifiable minor, seemingly engaged in sexually explicit activity, it is analogous to the image in *Bach* and not protected by the First Amendment. There is an important distinction, however, between the morphed image in *Bach* and the morphed image in this case. Whereas the image in *Bach* recorded the sexual abuse of the nude minor who was posed in the original image, Anderson's

morphed image superimposed M.A.'s face onto an image of two adults. No minor was sexually abused in the production of Anderson's image. Under the Supreme Court's reasoning in *Stevens*, this difference is significant enough to distinguish Anderson's image from the unprotected speech in *Bach*—unless the Court were to conclude that morphed images like Anderson's come within a category of speech that has been historically unprotected but not yet specifically identified in the case law. *See Stevens*, 559 U.S. at 472. We therefore decline to affirm the district court's order based on the categorical rationale advanced by the government.

B.

The government argues alternatively, however, that the child pornography statutes as applied to Anderson also satisfy strict scrutiny under the First Amendment. Where a statute prohibits constitutionally protected speech based on its content, the government must demonstrate that the prohibition is "justified by a compelling interest and is narrowly drawn to serve that interest." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011). The government "must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Id.* (internal citation omitted) (quoting *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 822 (2000)). We conclude that the government has satisfied that heavy burden in this case.

The Supreme Court has long recognized as "compelling" the government's "interest in safeguarding the physical and psychological well-being of a minor." *Ferber*, 458 U.S. at 756 (internal quotation omitted). In *Free Speech Coalition*, the Court continued to recognize this interest as compelling, and noted in *dicta* that "morphed images . . . implicate the interests of real children and are in that sense closer to the images in *Ferber*." 535 U.S. at 242.

The morphed image at issue here implicates the government's interest in protecting minors, and a portion of our reasoning in *Bach* is on point. Even though "there is no contention that the nude body actually is that of [M.A.], . . . a lasting record has been created of [her] . . . seemingly engaged in sexually explicit activity. [She] is thus victimized every time the picture is displayed." *Id.* Although subjects of morphed images like M.A. do not suffer the direct physical and psychological effects of sexual abuse that accompany the production of traditional child pornography, the morphed images' "continued existence causes the child victims continuing harm by haunting the children in years to come." *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). "[M]orphed images are like traditional child pornography in that they are records of the harmful sexual exploitation of children. The children, who are identifiable in the images, are violated by being falsely portrayed as engaging in sexual activity." *Shoemaker v. Taylor*, 730 F.3d 778, 786 (9th Cir. 2013).

Anderson compares this psychological and reputational injury to the "indirect harms" of virtual child pornography—its potential use in seducing minors and its effect on the market for real child pornography—that the Supreme Court found insufficiently compelling in *Free Speech Coalition*. *See* 535 U.S. at 250-55. But unlike those harms, which "depend[ed] upon some unquantified potential for subsequent criminal acts," the damage from a morphed image is felt directly by the identifiable minor and "necessarily follow[s] from the speech" itself. *Id.* at 250. The government thus has a compelling interest in protecting innocent minors from the significant harms associated with morphed images.

Next, to satisfy strict scrutiny, the criminal prohibition must be narrowly drawn to serve that compelling interest: "The First Amendment requires that the Government's chosen restriction on the speech at issue be 'actually necessary' to achieve its interest." *United States v. Alvarez*, 132 S. Ct. 2537, 2549 (2012) (plurality opinion) (quoting *Entm't Merchs. Ass'n*, 131 S. Ct. at 2738). The narrow tailoring requirement dictates that "[i]f a less restrictive alternative would serve the

Government's purpose, the legislature must use that alternative" rather than prohibit Anderson's actions under the criminal law. *Playboy Entm't Grp.*, 529 U.S. at 813; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010).

Anderson argues that the law as applied here is not narrowly tailored because it encompasses an image that clearly depicts adult bodies and because it punishes "private" distribution of a morphed image. But the harm a child suffers from appearing as the purported subject of pornography in a digital image that is distributed via the Internet can implicate a compelling government interest regardless of the image's verisimilitude or the initial size of its audience. Anderson's distribution targeted M.A. through her Facebook account, and the image suggested her involvement in sexual intercourse as an eleven-year-old child. There was no less restrictive means for the government effectively to protect this child from the exploitation and psychological harm resulting from the distribution of the morphed image than to prohibit Anderson from disseminating it. We therefore conclude that 18 U.S.C. §§ 2252A(a)(2)(A) and 2256(8)(C) are constitutional as applied to Anderson's conduct.

\*      \*      \*

The order of the district court denying Anderson's motion to dismiss the indictment is affirmed.[2]

———————————————

[2]In supplemental briefs filed in this court, the parties agree that the judgment includes two clerical errors. The judgment states that Anderson was convicted of "receipt" of child pornography when it should say "distribution," and the judgment cites 18 U.S.C. § 2256(8)(A) as the pertinent definitional section when it should cite 18 U.S.C. § 2256(8)(C). The district court may correct these errors as appropriate "at any time." Fed. R. Crim. P. 36.