# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40319

United States Court of Appeals
Fifth Circuit

**FILED**
February 13, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

CLIFFORD LAVERNE MECHAM, JR.

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Real child pornography is not protected speech under the First Amendment. *Osborne v. Ohio*, 495 U.S. 103 (1990); *New York v. Ferber*, 458 U.S. 747 (1982). But virtual child pornography—sexually explicit images "created by using adults who look like minors or by using computer imaging"—is protected speech. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002). This appeal asks whether the First Amendment protects pornography that falls between those two categories. The defendant superimposed the faces of actual children on pornographic photos of adults to make it appear that the minors were engaged in sexual activity. Unlike virtual pornography, this "morphed" child pornography uses an image of a real child. Like virtual pornography, however, no child actually engaged in sexually explicit conduct. Circuits

No. 19-40319

disagree about whether morphed child pornography is protected speech.  We agree with the majority view that morphed child pornography does not enjoy First Amendment protection, so we affirm the conviction.  But the fact that the pornography was created without involving a child in a sex act does mean that a sentencing enhancement for images that display sadistic or masochistic conduct does not apply, so we remand for resentencing.

I.

Clifford Mecham took his computer to a technician for repairs.  The technician discovered thousands of images showing nude bodies of adults with faces of children superimposed.  The technician reported the pornography to the Corpus Christi Police Department.

After receiving this report, police executed a search warrant of Mecham's home and seized several electronic devices.  Mecham waived his *Miranda* rights and admitted he had added the faces of his four granddaughters to photos and videos of adults engaged in sexual conduct.

Mecham later explained why he made the images.  After Mecham spent many years interacting with his grandchildren, his daughter prevented him from having any contact with her children.  By creating the images, he hoped to get back at his family for cutting him off.

A forensic analysis of the items seized from Mecham's home revealed over 30,000 pornographic files.  All these photos and videos were morphed child pornography using the faces of Mecham's grandchildren.  The children were four, five, ten, and sixteen in the photos Mecham used.  Mecham emailed some videos to his oldest granddaughter.   One of those videos shows that granddaughter's face on an adult female having sex.  Mecham superimposed his face on the male in the video.  The video uses computer animation to show the male ejaculating, with the semen shooting to the granddaughter's mouth.

2

No. 19-40319

Although Mecham distributed at least some videos to his granddaughter, the grand jury charged him only with possession of child pornography. The video listed in that count lasts 8 minutes and 43 seconds. It adds the face of Mecham's five-year-old granddaughter to a montage of photos of an adult female engaging in oral, vaginal, and anal sex. In parts of the video, Mecham's face is morphed onto the face of the men engaging in the acts.

Mecham moved to dismiss the indictment, arguing that the First Amendment protects morphed child pornography from prosecution. The district court disagreed.

The case proceeded to a stipulated bench trial, after which the court found Mecham guilty. The court later sentenced Mecham to a prison term of 97 months.

## II.

## A.

Child pornography cases are frequently prosecuted in federal court. So it may be surprising that such laws are of relatively recent vintage. The history of obscenity law explains why child pornography laws are a modern development. Before the Founding, most colonies treated profanity or blasphemy as criminal offenses. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 104 (1973) (Brennan, J., dissenting). During the nineteenth century, state prosecutions for the publication of "lewd or obscene" material increased under the common law and statutes. *Id*. The federal government joined in with the Tariff Act of 1842, which barred importing obscene material, and especially with the Comstock Act of 1873, which criminalized mailing obscene material. *Id*.; *Smith v. United States*, 431 U.S. 291, 311−313 (1977) (Stevens, J., dissenting). From 1842 to 1956, Congress enacted 20 such obscenity laws. *Roth v. United States*, 354 U.S. 476, 485 (1957). With this many general

obscenity laws on the books, there was no need for laws targeting sexually explicit material involving children.

Then obscenity laws came under constitutional scrutiny in the mid-twentieth century. The Supreme Court held that obscenity "is not within the area of constitutionally protected speech." *Id*. But that did not resolve the constitutional status of obscenity prosecutions. The Court also recognized that "sex and obscenity are not synonymous," meaning that some depictions of sex are entitled to First Amendment protection. *Id*. at 487. Over the next several years, the Court grappled with drawing the line between unprotected obscenity and protected sexual material. In 1973, the Supreme Court tried to put an end to its "intractable obscenity problem" with a test requiring the government to prove that an allegedly obscene work appeals to the prurient interest, is offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. *Miller v. California*, 413 U.S. 15, 16, 24 (1973) (quoting *Interstate Circuit, Inc. v. Dallas*, 390 U.S. 676, 704 (1968) (Harlan, J., concurring and dissenting)). Although *Miller* stabilized the Supreme Court's obscenity jurisprudence, its "community standards" test did not "make obscenity readily identifiable," leaving its "prosecution difficult and fraught with constitutional challenges." Note, James H. Jeffries IV, *Seizing Obscenity: New York v. P.J. Video, Inc. and the Waning of Presumptive Protection*, 65 N.C. L. REV. 799, 804 (1987).

With post-*Miller* obscenity law an uncertain vehicle for regulating sexually explicit materials, child pornography laws emerged. In 1977, Congress passed the first federal law aimed at child pornography. *See* Protection of Children Against Child Exploitation Act of 1977, Pub. L. No. 95-225, 92 Stat. 7 (1978). At the time, only six states had such laws. S. REPORT NO. 95-438, at 48 (1977). By 1980, less than a decade after *Miller*, twenty states had laws "prohibit[ing] the distribution of material depicting children

engaged in sexual conduct without requiring that the materially be legally obscene." *Ferber*, 458 U.S. at 749.

New York enacted one of the early child pornography laws.[1] *Id.* at 750. Its law, which criminalized distribution but not possession of child pornography, soon reached the Supreme Court. *Id.* at 750–51. The Court rejected a First Amendment defense. It gave five reasons why "the States are entitled to greater leeway in the regulation of pornographic depictions of children." *Id.* at 756. First, the government has a compelling interest in "safeguarding the physical and psychological well-being of a minor." *Id.* at 756–57 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)). Second, distribution of child pornography compounds the sexual abuse of children by circulating a "permanent record" of the abuse. *Id.* at 759. Third, outlawing the sale of child pornography reduces the economic incentive to create it. *Id.* at 761–62. Fourth, any value of child pornography is "exceedingly modest, if not *de minimis*." *Id.* at 762. Fifth, categorically excluding child pornography from the First Amendment is consistent with the longstanding recognition that bans on certain types of speech escape First Amendment scrutiny when "the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake." *Id.* at 763–64. As examples of speech categorically excluded from the First Amendment, the Court cited fighting words or libel against nonpublic figures. *Id.* at 763.

Not long after *Ferber* the Supreme Court concluded that states may also ban possession. *See Osborne*, 495 U.S. at 111. *Osborne*, largely echoing *Ferber*, cited the following reasons for its holding: punishing possession reduces demand for the pornography; a ban on possession may limit the reputational

---

[1] A preenforcement challenge to the New York law resulted in the first use of the term "child pornography" in a federal reporter. *See St. Martin's Press, Inc. v. Carey*, 440 F. Supp. 1196, 1205–06 (S.D.N.Y. 1977), *rev'd*, 605 F.2d 41 (2d Cir. 1979).

No. 19-40319

damage to the child by encouraging destruction of the images; and "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." *Id.* at 109–11.

The constitutionality of child pornography laws seemed settled. But in the 1990s Congress expanded the reach of the federal statute after child pornography proliferated with the rise of personal computers and the internet. The Child Pornography Prevention Act of 1996 added both virtual and morphed child pornography to the types of depictions federal law prohibits. *Free Speech Coal.*, 535 U.S. at 239.

The ban on virtual child pornography did not last long. In 2002, the Supreme Court held that images not depicting real children but that "appear" to do so are protected speech.[2] *Id.* at 239–40, 256. The Supreme Court first emphasized that "themes [of] teenage sexual activity and the sexual abuse of children [] have inspired countless literary works," including *Romeo and Juliet. Id.* at 247.[3] The Supreme Court then distinguished its cases allowing child pornography prosecutions. Unlike real child pornography, virtual pornography is not "'intrinsically related' to the sexual abuse of children." *Id.* at 250 (quoting *Ferber*, 458 U.S. at 759). And unlike real child pornography,

---

[2] The Court recognized at the outset of its opinion that some virtual child pornography may be prosecutable under obscenity laws (obscene material need not depict real people). *Free Speech Coal.*, 535 U.S. at 240. But it was considering only the constitutionality of the child pornography law's prohibition on virtual pornography. *Id.* The video Mecham was convicted of possessing would present a strong obscenity case, but we only consider the child pornography law as that is the one the grand jury charged.

[3] *Free Speech Coalition* read *Ferber* to recognize First Amendment protection for some virtual pornography because of this artistic value, quoting *Ferber*'s acknowledgment that some sexual depictions involving children might have "literary or artistic value," but in those cases "a person over the statutory age who perhaps looked younger could be utilized." *Id.* at 251 (quoting *Ferber*, 458 U.S. at 763).

which results in "injury to the child's reputation and emotional well-being," *id.* at 249, no child is involved in the creation of virtual pornography, *id.* at 250.[4]

The concern about child pornography's reputational and emotional impact on children also came up in *Free Speech Coalition*'s mention of the 1996 law's separate ban on "morphed pornography." That provision defines child pornography as "any visual depiction . . . whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where . . . such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C). Although the Supreme Court did not resolve whether the First Amendment protects morphed pornography, it noted that images using photos of identifiable minors to make it appear they are engaged in sexual acts "implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Free Speech Coal.*, 535 U.S. at 242.

*Free Speech Coalition* thus tells us that morphed child pornography is "closer" to real child pornography because the image makes it appear that an "identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C). But it does not say whether it is close enough to real child pornography to constitute unprotected speech. That is the question this case poses.

B.

Mecham's video is morphed child pornography. He imposed the face of his granddaughter on the body of an adult engaged in sexual acts to make it appear that an identifiable minor was engaged in sexual conduct. He contends

---

[4] *Free Speech Coalition* appears to recognize that one interest *Osborne* had cited for why child pornography is unprotected could also apply to virtual child pornography: that the images might be used to solicit minors to engage in sexual conduct. 535 U.S. at 250. The Court held, however, that this rationale alone was not sufficient to categorically exclude images from the First Amendment. *Id.*

that the video is entitled to First Amendment protection because, even though it uses an image of a real child, it does not depict the sexual abuse of that child. That underlying criminal conduct is necessary, in his view, for an image to be excluded from the First Amendment.

To support his argument that child pornography falls outside the First Amendment only when it depicts sexual abuse of a real minor, Mecham points to a Supreme Court case decided after the child pornography decisions we have discussed. *United States v. Stevens*, 559 U.S. 460 (2010), held that images depicting cruelty to animals are not categorically excluded from the First Amendment. *Id.* at 472. In rejecting the government's emphasis on the negligible value of animal "crush" videos, *Stevens* noted that its prior recognition of categorical exclusions from the First Amendment did not depend on "a simple cost-benefit analysis" of the speech's worth. *Id.* at 471. The Court acknowledged that it had discussed the "*de minimis*" value of child pornography in excluding such images from the First Amendment but explained that *Ferber* "did not rest on this 'balance of competing interests' alone." *Id.* (quoting *Ferber*, 458 U.S. at 764). *Ferber* presented a "special case" because "[t]he market for child pornography was 'intrinsically related' to the underlying abuse" of children. *Id.* (quoting *Ferber*, 458 U.S. at 759). And, *Stevens* continued, it has long been recognized that speech "used as an integral part of conduct in violation of a valid criminal statute" does not enjoy First Amendment protection. *Id.* (quoting *Ferber*, 458 U.S. at 762).

*Stevens* persuaded one circuit to conclude that morphed child pornography created without any child's being abused is protected First Amendment speech. *See United States v. Anderson*, 759 F.3d 891, 894–95 (8th Cir. 2014); *see also State v. Zidel*, 940 A.2d 255, 265 (N.H. 2008) (holding the same before *Stevens*). The image in *Anderson*, like Mecham's video, "digitally superimposed" the face of a young girl over the face of an adult female having

sex. 759 F.3d at 893. The Eighth Circuit distinguished its earlier decision allowing prosecution of morphed child pornography when the face of a minor was superimposed on the face of another minor engaging in sexually explicit conduct. *Id.* at 894 (citing *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005)). The Eighth Circuit concluded that the key under *Stevens* is whether the morphed child pornography depicts the underlying crime of sexual abuse of any minor, even if not the minor whose face is displayed. *Id.* at 895.[5]

Two circuits have reached the opposite conclusion, concluding that morphed child pornography raises similar concerns as real child pornography and thus shares its categorical exclusion from the First Amendment. *See Doe v. Boland,* 698 F.3d 877 (6th Cir. 2012); *United States v. Hotaling*, 634 F.3d 725 (2d Cir. 2011).[6] By using identifiable images of real children, these courts

---

[5] *Anderson* nonetheless affirmed the conviction for distributing the morphed image after applying strict scrutiny to the protected speech. 759 F.3d at 895–96. As an alternative ground for affirming, the government argues that the prosecution of Mecham's video likewise survives strict scrutiny even if it is subject to the First Amendment. Mecham counters that prosecution of possession, as opposed to the distribution charge in *Anderson*, is not narrowly tailored to further the government's compelling interest in eliminating the reputational harm of morphed child pornography. We need not address this question because we take the majority view that morphed child pornography is categorically excluded from the First Amendment. And on the categorical question, Mecham concedes it does not matter whether he was charged with possession or distribution, just as that distinction does not matter for real child pornography.

Mecham's concession likely stems from the framing the parties (and other courts) have used for the First Amendment issue: Should morphed child pornography be treated like the real thing or like virtual child pornography? If the answer is that the First Amendment treats morphed images like real child pornography, then *Osborne* would seem to reject any distinction between possession and distribution offenses. But that distinction matters in at least one other area. Although *Roth* held that obscenity is categorically excluded from the First Amendment, the Supreme Court later ruled that criminalizing the private possession of obscenity abridged the "personal liberties guaranteed by the First and Fourteenth Amendments." *Stanley v. Georgia*, 394 U.S. 557, 568 (1969). Because Mecham did not raise the issue, we do not decide whether a *Stanley*-like privacy claim may provide a defense to a defendant charged with only the private possession of morphed child pornography.

[6] The United States argues that the circuit split is more lopsided. But the cases it cites did not directly hold that morphed child pornography is categorically excluded from the First Amendment. *Shoemaker v. Taylor*, 730 F.3d 778, 787 (9th Cir. 2013) (holding in the habeas context that it is not clearly established that the First Amendment protects morphed

conclude, morphed child pornography implicates the reputational and emotional harm to children that has long been a justification for excluding real child pornography from the First Amendment. *Doe*, 698 F.3d at 883; *Hotaling*, 634 F.3d at 729–30. The Sixth Circuit also pointed out that a ban on morphed child pornography does not raise the "*Romeo and Juliet*" threat to literary and artistic expression that the unconstitutional ban on adult actors appearing like children engaged in sexually explicit conduct created. *Doe*, 698 F.3d at 883–84 (citing *Free Speech Coal.*, 535 U.S. at 247). And, the Sixth Circuit added, morphed child pornography has "relatively weak expressive value." *Id.* at 883.

That final point about the negligible value of morphed pornography may not carry much weight in light of *Stevens*'s warning against relying solely on a balancing approach when determining if a category of speech is excluded from the First Amendment. Indeed, neither the Second nor Sixth Circuit considered *Stevens* when ruling that morphed child pornography is not protected speech. *See Doe*, 698 F.3d at 883−84 (not addressing *Stevens* though it had issued two years earlier); *Hotaling*, 634 F.3d at 725 (issued after *Stevens*). But those circuits' conclusion that morphed child pornography falls outside the First Amendment came less from a balancing test than from the interest in preventing reputational and emotional harm to children that bans on real and morphed pornography share. *See Free Speech Coal.*, 535 U.S. at 242. Does *Stevens* undercut that interest in preventing reputational and emotional harm to children, which has long been one of the primary reasons child pornography may be prosecuted?

As is typically the case when a circuit split exists, there are reasoned arguments on both sides of this issue. In deciding which side has the better

---

child pornography); *United States v. Hoey*, 508 F.3d 687, 693 (1st Cir. 2007) (reasoning that morphed child pornography causes psychological harm, justifying the application of a sadistic-conduct sentence enhancement, but not addressing a First Amendment challenge).

argument, we begin with a larger jurisprudential point about the restraint lower courts should show when Supreme Court caselaw is arguably in flux. We are not supposed to get ahead of the Supreme Court and read tea leaves to predict where it might end up. The Supreme Court's child pornography decisions—from *Ferber* through *Free Speech Coalition*—invoke the concern about reputational and emotional harm to children; a one-paragraph discussion of child pornography in a case involving animal crush videos does not allow us to overrule those decisions. *United States v. Price*, 775 F.3d 828, 838 (7th Cir. 2014) (noting that *Stevens* discussed child pornography "only in passing" and "then only to reject an analogy between it and depictions of animal cruelty"); *cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). That is especially true when *Stevens* makes no mention of the interest in preventing reputational or emotional harm to children. *See Stevens*, 559 U.S. at 471. It had no reason to, as that interest could not be a justification for banning videos depicting animal torture (the minimal value of the crush videos was urged as a reason they should not be considered protected speech, which is why the Court addressed that aspect of *Ferber*). Nor does *Stevens* say that a connection to underlying sexual abuse is the only one of *Ferber*'s many rationales that now matters; it instead said that feature made *Ferber* a "special case." *Id.* If *Stevens*'s emphasis on child pornography's connection to criminality meant that such images could be prosecuted only when they depict sexual abuse of a minor, "[t]hat would have been a significant doctrinal development, and not likely to be hidden in a case about crush videos." *Price*, 775 F.3d at 839.

Why would limiting the categorical exclusion of child pornography to images depicting criminal abuse of children be so significant? Because the federal definition of *real* child pornography is not limited to images that depict sexual abuse of a minor. Among the images long treated as "sexually explicit" are those showing a "lascivious exhibition of the anus, genitals, or pubic area" of a minor. 18 U.S.C. § 2256(2)(A)(v). This definition was used to prosecute a father who took images of his young stepdaughters through a hidden bathroom camera and cropped the images to focus on their genitals. *United States v. Traweek*, 707 F. App'x 213, 215 (5th Cir. 2017). In affirming the conviction, we rejected the defendant's argument that *Ferber* requires "that the minor affirmatively commit a sexual act or be sexually abused." *Id.* at 215 n.2 (citing *United States v. Steen*, 634 F.3d 822, 826–28 (5th Cir. 2011)). The Seventh Circuit likewise rejected a *Stevens* challenge to images with a lascivious exhibition of the genitals that may "stop short of depicting illegal child abuse." *Price*, 775 F.3d at 839. It concluded that "nothing in [*Stevens*'s] brief discussion addresses the definition of child pornography or limits the category to visual depictions of criminal child abuse." *Id.*

Similar prosecutions involving images that zoom in on a minor's genitals, but that do not depict sexual abuse of a minor, have been brought in many federal circuits as well as in state courts. *State v. Bolles*, 541 S.W.3d 128, 136–37 (Tex. Crim. App. 2017) (citing cases from the Sixth, Eighth, Ninth, and Eleventh Circuits); *see also United States v. Lyckman*, 235 F.3d 234, 240 (5th Cir. 2000) (recognizing that "child pornography may involve merely 'pictures of a [naked] child' . . . without physical sexual contact"). This application of child pornography laws to lewd or lascivious displays of a child's genitals is not new; the New York child pornography law upheld in *Ferber* included "lewd exhibition of the genitals" among the banned material. *Ferber*, 458 U.S. at 765 (quoting N.Y. PENAL LAW § 263.00(3)) (approving that aspect of the definition

as a "permissible regulation"); *see also United States v. Williams*, 553 U.S. 285, 296 (2008) (recognizing that *Ferber* "constitutionally approved" of the New York law's definition of "sexual conduct," which largely mirrors the federal child pornography law's definition of "sexually explicit conduct"). Reading *Stevens* to allow a First Amendment defense to any child pornography prosecution when the images do not depict an underlying sexual abuse crime would thus limit the reach not just of the ban on morphed child pornography but of the decades-old bans on real child pornography.

We do not read *Stevens* to have made that significant a departure from the Court's child pornography decisions. Those decisions have consistently cited the interest in preventing reputational and emotional harm to children as a justification for the categorical exclusion of child pornography from the First Amendment. *Free Speech Coalition* and every circuit to consider the question have recognized that morphed child pornography raises this threat to a child's psychological well-being. We conclude that because morphed child pornography depicts an identifiable child, it falls outside the First Amendment. Mecham's conviction is affirmed.

## III.

Having affirmed Mecham's conviction, we now turn to his sentence. Mecham argues that the district court erred in applying the four-level enhancement for a child pornography offense that "involve[s] material that portrays sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.2(b)(4)(A). The Presentence Report concluded that "numerous morphed images and videos" among the thousands that made up Mecham's relevant conduct qualified for this enhancement. Mecham objected, and the government's response argued only that the video that served as the count of conviction portrayed sadistic conduct. Without making findings, the district court overruled Mecham's objection and applied the enhancement. The four

points meant Mecham's advisory Guidelines range was 97–121 months instead of 63–78 months.  After "look[ing] at the Guidelines . . . and us[ing] the factors in [18 U.S.C. §] 3553(a) for sentencing," the district court sentenced Mecham to the low end of the range it adopted: 97 months.

An image is sadistic if it "depicts conduct that an objective observer would perceive as causing the victim in the image physical or emotional pain contemporaneously with the image's creation." *United States v. Nesmith*, 866 F.3d 677, 681 (5th Cir. 2017).  Requiring the pain to be "contemporaneous with the image's creation" ensures that not every child pornography conviction receives the enhancement as all victim children are likely to experience emotional pain once they learn that pornography depicting them exists.  *See id.*  *Nesmith* rejected the sadism enhancement for images depicting a defendant's penis placed on the lips of an unconscious child.  *Id.* at 678, 681. It reasoned that if a child is not being harmed in the image and does not know the image is being made, creation of the image does not cause contemporaneous physical or emotional pain.  *Id.* at 681.

The district court seemed resistant to applying *Nesmith*.  When Mecham cited the case at sentencing, the district court did not distinguish it.  Instead, it noted the seriousness of the conduct in *Nesmith* (it had presided over that case) and commented "We're going to give [the Fifth Circuit] more cases, then, to look at."  But *Nesmith* needed to be considered.  It means that the postcreation emotional harm to Mecham's granddaughters does not warrant the enhancement.

Without contemporaneous emotional harm, an image must portray physical pain to be deemed sadistic.  Sexual penetration of an actual prepubescent child qualifies.  *See Lyckman*, 235 F.3d at 238–40.  But for morphed pornography involving the obvious use of an adult body, intercourse alone does not involve the requisite pain.  That is not to say that morphed

pornography can never qualify for the sadism-or-masochism enhancement. The body image may be of a prepubescent child, just not the one whose face is shown. *See Bach*, 400 F.3d at 632. Or the body image may show conduct that is painful or cruel even for an adult; when, for example, the adult engaged in the sex act is forcibly restrained. *See Hotaling*, 634 F.3d at 731–32. Or it may reasonably appear that the body image is of a prepubescent child (even though it is not) for whom the sex act would be painful. *See id*.; *see also Nesmith*, 866 F.3d at 680 (holding that the standard is objective). The key inquiry is whether a reasonable viewer would conclude that the image depicts the contemporaneous infliction of pain. *See Nesmith*, 866 F.3d at 681.

The district court did not make that finding here. Nor does the Presentence Report or our review of the record support the sadism enhancement. The district court thus erred in including those four points in its Guidelines calculation.

The government contends this discussion of the sadism enhancement was unnecessary because the district court would have applied the same 97-month sentence without it. To show a sentencing error is harmless, the government must "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010).

The government's harmlessness argument fails at the first step. The district court did not say it would have given the same 97-month sentence without the enhancement, and that is the most straightforward way to prove harmlessness. *See, e.g., United States v. Richardson*, 676 F.3d 491, 510–11 (5th Cir. 2012) (affirming a sentence despite a calculation error when the district court stated it would impose the same sentence under either potential sentencing range). Although there are other situations in which the

government may be able prove harmlessness, the feature of Mecham's sentencing that it emphasizes—that the court considered the section 3553(a) statutory sentencing factors—is unexceptional. Under the advisory Guidelines regime, a court is supposed to consider those sentencing factors when determining the sentence. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007) (explaining that after determining the advisory Guidelines range, "the district judge should then consider all of the § 3553(a) factors"). So without more, a court's commonplace consideration of the statutory sentencing factors does not render a sentencing error harmless. We have found that to be the case even when the court imposes an out-of-Guidelines sentence. *See Ibarra-Luna*, 628 F.3d at 718–19 (holding that a court's analyzing the 3553(a) factors and assigning an out-of-range sentence was not enough to demonstrate the court would have assigned the same sentence but-for its sentencing error). When the court imposes a sentence at the low end of the Guidelines, making it more likely the advisory range had an anchoring effect, a court's mere consideration of the section 3553(a) factors is an even weaker basis for finding harmlessness.

Application of the sadism-or-masochism enhancement was not harmless. And it was error. The sentence is vacated and the case is remanded for Mecham to be sentenced with an advisory range of 63–78 months.

\* \* \*

Mecham's conviction is AFFIRMED. The sentence is VACATED and the case REMANDED for resentencing consistent with this opinion. We express no view on what sentence the district court should announce on remand.